[L. A. No. 20704. In Bank. Aug. 18, 1950.]

ALICE GORDILLO REDIKER, Appellant, v. ABRAHAM SANFORD REDIKER et al., Respondents.

William Ellis Lady for Appellant.

Hahn, Ross, Goldstone & Saunders and Philip Gordon for Respondents.

TRAYNOR, J.—██ Plaintiff appeals from a judgment annulling as bigamous her marriage to defendant and awarding her $15,000 as a putative spouse for her share of the community property and as compensation for her services to defendant during the purported marriage. She seeks to abandon her appeal from the award of $15,000, but that award is based on the decree of annulment and is inseparable therefrom. The appeal must therefore be taken from the entire judgment. (*Milo* v. *Prior*, 210 Cal. 569, 571 [292 P. 647]; *Bailey* v. *Bailey*, 60 Cal.App.2d 291, 293 [140 P.2d 693].)

Defendant and Bessie Yalkut were married in New York in 1922. The following year they moved to Havana, Cuba, where defendant entered the manufacturing business and registered with the American consul as a Cuban resident. They lived together in Havana until 1930 when Bessie and their minor daughter returned to the United States. Defendant remained in Havana, and on January 27, 1939, in the Court of First Instance of the Southern District of Havana, he obtained a default divorce decree from Bessie. Bessie was awarded custody of their daughter. On November 28, 1939, defendant married plaintiff and lived with her as her husband until January 26, 1945, when he left plaintiff and came to Los Angeles. She followed him and discovered that he had married Josefina Valle, a former employee in his Havana factory.

Defendant was charged with bigamy because he married Miss Valle while still married to plaintiff. He was convicted of the charge but was granted probation upon payment of a $2,500 fine.

Plaintiff brought this action in the Superior Court of Los Angeles County for separate maintenance on the grounds of adultery and extreme cruelty. Defendant was personally served in the action and cross-complained for an annulment of their marriage on the ground that at the time of their purported marriage plaintiff was still the wife of one Reinhold Graf. The trial court found that plaintiff was divorced from Graf six years before her marriage to defendant. The court also found, however, that at the time of her marriage to defendant he was still the husband of Bessie Yalkut Rediker and that the marriage of plaintiff and defendant was therefore bigamous and void. It found defendant's Cuban decree invalid for want of jurisdiction in that ''said Bessie Rediker was never served with process in any such proceedings or purported proceedings, if any were had, and no trial or hearing was had in connection with any such proceedings or purported proceedings for the purpose of divorcing defendant from Bessie Rediker,'' and that defendant was lawfully married to Bessie Rediker until she obtained a divorce decree on August 28, 1944, in the Circuit Court of Dade County, Florida.

Defendant introduced the Florida decree over plaintiff's objection for the purpose of establishing that he and Bessie were lawfully married until the entry of the decree dissolved their marriage. The trial court, holding that the decree was conclusive of that fact stated: ''Now, the Constitution of the United States specifically places upon this Court the duty to give full faith and credit to that judgment of the Court of the State of Florida. . . . Consequently I am not in a position to ignore it. I have to accept it and as I pointed out in my notice of decision that judgment carried the absolutely necessary implication that up to the time that it was rendered Abraham and Bessie were married and that at the time Abraham married Alicia he was married to Bessie. . . . You say that you were not a party to the divorce action. That is not a fully correct statement because we are all parties to every divorce action because a divorce action is an action in rem and that divorce action was presented in this Court for the purpose of proving not any of the issues that were involved in the case but simply for the purpose of proving itself, namely, that she was given a decree of divorce as of a certain date and in my judgment it was very properly admissible in this case.''

The trial court concluded that in ''proving itself'' the

Florida decree proved the ''absolutely necessary implication'' that defendant and Bessie were married until the date it was entered and that it was res judicata on that issue. It therefore found that the marriage of defendant and plaintiff was bigamous and granted the prayer of the cross-complaint for an annulment.

On this appeal plaintiff contends that the Florida decree is res judicata in this action only insofar as it adjudicated the parties' lack of marital relationship to each other from then on, that the trial court's finding that the Cuban divorce is invalid is not supported by the evidence, and that defendant, having initiated the Cuban action and having taken advantage of the decree therein by remarrying, is estopped to deny its validity.

Defendant contends that an existing valid marriage is a condition precedent to the entry of a divorce decree under Florida law (*Keener* v. *Keener*, 152 Fla. 13 [11 So.2d 180]), and that the entry of the decree imports a finding that defendant and Bessie were lawfully married at the time of its entry, five years after the purported marriage of defendant to plaintiff. He urges that, since a divorce decree is a judgment in rem, the essential finding that the parties thereto were lawfully married is res judicata in this action, and that, since the Florida court had jurisdiction to enter the decree and plaintiff does not contend that it was procured by fraud or collusion, this court must accord full faith and credit to the decree and to the finding of a lawful marriage necessarily implied therein. (U.S. Const., art. IV, § 1; *Williams* v. *North Carolina*, 317 U.S. 287, 299 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Estin* v. *Estin*, 334 U.S. 541, 546-547 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412].) He alleges that ''a judgment in a divorce case must be treated as dealing with status prior to divorce as well as after, and the one independently of the other,'' and that the *res* in a divorce action ''is not only the subsequent singleness of the parties, but also their prior marital status—a determination which is 'immune from collateral attack.' ''

That contention, however, is opposed to the prevailing rule in most of the jurisdictions of the United States and to several decisions of this court. It is an oversimplification to state that a divorce proceeding is a proceeding in rem, and to proceed from that statement to the assumption that a decree entered therein is res judicata in an action between a party and a stranger thereto, not only as to the subsequent status

of the parties with relation to each other, but also as to all issues decided or that might have been decided in the proceeding. The weight of authority holds that a decree of divorce is a judgment in rem only to the extent that it adjudicates the future status of the parties in relation to each other. (*Williams* v. *North Carolina,* 317 U.S. 287, 298 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Williams* v. *North Carolina,* 325 U.S. 226, 232 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366].) As between parties or privies, the decree is res judicata not only of their status with relation to each other but also of all issues that were litigated or that could have been litigated therein. (*Blumenthal* v. *Blumenthal,* 97 Cal.App. 558, 561 [275 P. 987]; *Petry* v. *Petry,* 47 Cal.App.2d 594, 595 [118 P.2d 498]; *Borg* v. *Borg,* 25 Cal.App.2d 25, 29 [76 P.2d 218]; 2 Freeman, Judgments, § 906, p. 1904.) *Estate of Lee,* 200 Cal. 310, 314 [253 P. 145], on which defendant relies, has been properly interpreted in *Blumenthal* v. *Blumenthal, supra,* as stating the rule applicable between parties and their privies. As between strangers or strangers and parties, however, the decree is res judicata only in that it conclusively determines that the parties are thereafter free to remarry so far as any relation to each other is concerned. It does not establish the previous validity of their marriage against third persons who were not and had no right to be heard thereon. (2 Freeman, Judgments, § 910, p. 1913; 3 Freeman, Judgments, § 1524, pp. 3131-3132; Restatement, Judgments, § 74, p. 335; *Hunter* v. *Hunter,* 111 Cal. 261, 266 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Estate of James,* 99 Cal. 374, 379 [33 P. 1122, 37 Am.St.Rep. 60].) ''We may lay on one side, then, any argument based on the misleading expression that all the world are parties to a proceeding *in rem.* This does not mean that all the world are entitled to be heard, and as strangers in interest are not entitled to be heard, there is no reason why they should be bound by the findings of fact, although bound to admit the title or status which the judgment establishes.'' (Holmes, J., in *Brigham* v. *Fayerweather,* 140 Mass. 411, 413 [5 N.E. 265]; see also, *Wilson* v. *Mitchell,* 48 Colo. 454, 469 [111 P. 21, 30 L.R.A.N.S. 507]; *Oborn* v. *State,* 143 Wis. 249, 267 [126 N.W. 737, 31 L.R.A. N.S. 966]; *Williams* v. *Williams,* 63 Wis. 58, 75 [23 N.W. 110, 53 Am.Rep. 253]; *Pollard* v. *Ward,* 289 Mo. 275, 284 [233 S.W. 14, 20 A.L.R. 936]; *American Woolen Co.* v. *Lesher,*

267 Ill. 11, 17-18 [107 N.E. 882]; *Willey* v. *Howell,* 168 Ky. 466, 470 [182 S.W. 619]; *Matter of Holmes,* 291 N.Y. 261, 269-270, 271 [52 N.E.2d 424, 150 A.L.R. 447]; 44 Columb. L.Rev. 442, 444-445; 16 Cal.L.Rev. 146.)

The decisions of this court have established that a divorce decree is res judicata as to strangers thereto only to the extent that it establishes the future status of the parties. Thus, in *Hunter* v. *Hunter,* 111 Cal. 261 [43 P. 756, 52 Am.Rep. 180, 31 L.R.A. 411], plaintiff, suing to annul as bigamous his marriage to the defendant, introduced a decree of divorce obtained by her from her first husband 25 years after she married plaintiff. He asserted that the entry of the decree dissolving that marriage was res judicata of its existence until it was dissolved by the entry of the divorce decree. This court, however, held that as between a party to the divorce action and a stranger thereto the decree was a judgment in rem only in that it adjudicated the future status of the parties. "So far and no farther, the judgment bound him and all the world." (111 Cal. 261, 266.)

In *Estate of James,* 99 Cal. 374, 379 [33 P. 1122, 37 Am.St. Rep. 60], and *Estate of McNeil,* 155 Cal. 333, 343-344 [100 P. 1086], identical questions were presented. In each case, a first wife challenged the right of decedent's second wife to succeed to his estate. In each case the first wife contended that decedent's second marriage was bigamous for the reason that his divorce from his first wife was invalid. In support of that contention, each first wife offered in evidence a separate maintenance decree obtained by her after the decedent obtained the allegedly invalid divorce, contending that the separate maintenance decree was res judicata of the continued existence of the first marriage. In both cases, the court held that the later decree did not, as between a party thereto and a stranger, reinstate the first marriage notwithstanding the intervention of a previous decree.

This court has also held that an order admitting a will to probate, although a judgment in rem to that extent, was not res judicata of the essential finding that decedent was a California domiciliary, except as between the parties to the probate proceeding. (*Estate of Bloom,* 213 Cal. 575, 578-579 [2 P.2d 753]; see also, *Estate of Newman,* 124 Cal. 688, 692 [57 P. 686, 45 L.R.A. 780]; *Riley* v. *New York Trust Co.,* 315 U.S. 343, 352-353 [62 S.Ct. 608, 86 L.Ed. 885].) Although several decisions have held that the findings in a divorce action are res judicata as between the parties thereto, they

have disclaimed any intention to apply the doctrine to persons not parties to the divorce action. (*Estate of Hughes,* 80 Cal. App.2d 550, 556 [182 P.2d 253]; *Godfrey* v. *Godfrey,* 30 Cal.App.2d 370, 380 [86 P.2d 357]; *Borg* v. *Borg,* 25 Cal. App.2d 25, 29 [76 P.2d 218].)

Uncertainty as to the validity of migratory divorces created by the recent decisions of the United States Supreme Court (*Williams* v. *North Carolina,* 317 U.S. 287, 299 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Williams* v. *North Carolina,* 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]; *Rice* v. *Rice,* 336 U.S. 674 [69 S.Ct. 751, 93 L.Ed. 957]) has induced many spouses, doubtful of the validity of such a divorce and wishing to insure the validity of a remarriage, to seek a second divorce in the state of their present domicile. (See Powell, *And Repent at Leisure,* 58 Harv.L.Rev. 930, 1004.) The possibility that a trial court in a later proceeding may find that the moving spouse was not domiciled in the state in which the decree was entered may induce many spouses to secure a second decree rather than to rely on the first, to avoid the risk that later litigation will prove such reliance misplaced. (*Williams* v. *North Carolina,* 325 U.S. 226, 232 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]; *Rice* v. *Rice,* 336 U.S. 674 [69 S.Ct. 751, 93 L.Ed. 957]; *Crouch* v. *Crouch,* 28 Cal.2d 243 [169 P.2d 897]; see Powell, *supra.*)

 The rights of an innocent second spouse or the children of a second marriage are not diminished by the findings of fact in a proceeding to which they were not parties and in which they had no right to be heard. Such a holding would be not only unreasonable but constitutionally objectionable. A decision of any court purporting to bind by the findings of fact of an earlier action a person who was not a party thereto and who had no notice or right to a hearing in that action deprives that person of property without due process of law and is prohibited by the Fourteenth Amendment to the United States Constitution. (*Mullane* v. *Central Hanover Bank & Trust Co.* (April 24, 1950), 339 U.S. 306 [70 S.Ct. 652, 656, 94 L.Ed. 865]; *Hansberry* v. *Lee,* 311 U.S. 32, 40-41 [61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741]; *Gratiot County State Bank* v. *Johnson,* 249 U.S. 246, 248-249 [39 S.Ct. 263, 63 L.Ed. 587].) A state court cannot dispense with the requirement of notice and hearing by labelling the proceeding *"in rem"* if it seeks to make the findings of fact binding upon a stranger to the earlier action. A state court may no more

make its findings of fact binding on a person over whom it has no jurisdiction than it may bind him by a judgment in personam when he has not been personally served. (*Hansberry* v. *Lee, supra*; *Pennoyer* v. *Neff*, 95 U.S. 714, 729 [24 L.Ed. 565].)

Apart from the Florida decree, there is no evidence to support the finding that "the marriage between said Bessie Rediker and defendant was not dissolved prior to August 28, 1944 or at all by or as a result of any proceedings conducted" in the Cuban divorce action. The trial court did not find that defendant was not a bona fide Cuban domiciliary; defendant admits that he was. The Cuban court therefore had jurisdiction to enter the decree and, since its procurement was not the result of fraud or collusion, the decree must be given "the same effect as final judgments rendered in this state" or in the court of a sister state to which this court must give full faith and credit. (Code Civ. Proc., § 1915; *Williams* v. *North Carolina*, 317 U.S. 287, 299 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]; *Sherrer* v. *Sherrer*, 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355]; *Coe* v. *Coe*, 334 U.S. 378 [68 S.Ct. 1094, 1097, 92 L.Ed. 1451, 1 A.L.R. 1376]; *Baldwin* v. *Baldwin*, 28 Cal.2d 406, 410-411 [170 P.2d 670].)

The trial court found the Cuban divorce decree invalid for want of jurisdiction in that "said Bessie Rediker was never served with process in any such proceedings." It is undisputed that Bessie was not personally served in the Cuban action, but personal service on an absent spouse is not a jurisdictional requirement, if the action is brought in the state of domicile of the complainant. (*Williams* v. *North Carolina, supra*; *Baldwin* v. *Baldwin, supra*; *Crouch* v. *Crouch*, 28 Cal.2d 243 [169 P.2d 897]; *Saul* v. *Saul*, 122 F.2d 64, 69.) Constructive service on the absent spouse gives the court of the state of domicile jurisdiction of the cause and the parties, and the record is devoid of any evidence that Bessie was not constructively served in the Cuban action. The only evidence before the trial judge on that issue was the recital of jurisdiction in the Cuban decree. In the absence of competent contrary evidence, it must be presumed that the foreign court had jurisdiction and that its recital thereof is true. (*De Young* v. *De Young*, 27 Cal.2d 521, 525 [165 P.2d 457]; *Saul* v. *Saul*, 122 F.2d 64, 69.)

Defendant testified by deposition that he did not appear in the Cuban action but that he gave an attorney 75

dollars and requested him to procure a divorce, and that he knew nothing further about the matter until his attorney informed him that the divorce was granted. Entry of the decree upon the failure of the complainant to appear personally in the Cuban action may have been error, but his failure to appear did not deprive the Cuban court of jurisdiction to entertain the action. If a court has jurisdiction of an action, a judgment entered therein is not subject to collateral attack on a showing of error in the exercise of that jurisdiction. "Something more than mere error must be shown, in attack upon a foreign judgment, to deprive it of force and effectiveness." (Rutledge, J., in *Saul* v. *Saul,* 122 F.2d 64, 68; *Baldwin* v. *Baldwin,* 28 Cal.2d 406, 410-411 [170 P.2d 670].)

 Even if the Cuban decree were invalid, defendant cannot contest its validity. The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry. (*Bruguiere* v. *Bruguiere,* 172 Cal. 199, 203-204 [155 P. 988, Ann.Cas. 1917E 122]; *Kelsey* v. *Miller,* 203 Cal. 61, 86 [263 P. 200]; *Harlan* v. *Harlan,* 70 Cal.App.2d 657, 662 [161 P.2d 490]; *Estate of Davis,* 38 Cal.App.2d 579, 584-585 [101 P.2d 761, 102 P.2d 545]; *Hensgen* v. *Silberman,* 87 Cal.App.2d 668, 674 [197 P.2d 356]; *In re Kyle,* 77 Cal. App.2d 634, 639-640 [176 P.2d 96]; *Goodloe* v. *Hawk,* 113 F.2d 753, 756, 757; *Saul* v. *Saul,* 122 F.2d 64, 70; *Margulies* v. *Margulies,* 109 N.J.Eq. 391, 392 [157 A. 676]; *Van Slyke* v. *Van Slyke,* 186 Mich. 324, 330 [152 N.W. 921]; *Bowen* v. *Fink,* 34 F.Supp. 235; *Krause* v. *Krause,* 282 N.Y. 355, 360 [26 N.E.2d 290]; *Brown* v. *Brown,* 242 App.Div. 33 [272 N.Y.S. 877], aff'd. 266 N.Y. 532 [195 N.E. 186]; *Chapman* v. *Chapman,* 224 Mass. 427, 433 [113 N.E. 359]; *Matter of Lindgren,* 293 N.Y. 18, 22-23 [55 N.E.2d 849, 153 A.L.R. 936]; *Marvin* v. *Foster,* 61 Minn. 154, 160 [63 N.W. 484]; *Mohler* v. *Shank's Estate,* 93 Iowa 273, 282, [61 N.W. 981, 57 Am.St.Rep. 274, 34 L.R.A. 161]; Rest., Conflict of Laws, § 112, pp. 169-170; Goodrich, Conflict of Laws [3d ed., 1949], § 127, pp. 401-402.) Thus, in a suit for separate maintenance in which the husband asserted as a defense an earlier Nevada divorce secured by him, this court held that the plaintiff wife was estopped from contesting the validity of the decree by virtue of her remarriage in reliance upon it. (*Bruguiere* v. *Bruguiere,* 172 Cal. 199, 203-204 [155 P. 988, Ann.Cas.

1917E 122].) By the same reasoning, it has been held that a wife who consented to a Mexican "mail order divorce" and remarried in reliance upon it was estopped from questioning its validity in an action to determine whether she or her ex-husband's second wife was entitled to his estate. (*Hensgen* v. *Silberman*, 87 Cal.App.2d 668, 674 [197 P.2d 356]; see also *Estate of Davis*, 38 Cal.App.2d 579, 584-585 [101 P.2d 761, 102 P.2d 545].) The doctrine of estoppel has also been held applicable to cases in which a husband sought to assert the invalidity of his or his wife's earlier divorce from another as a defense to her action for divorce and alimony. (*Margulies* v. *Margulies*, 109 N.J.Eq. 391, 392 [157 A. 676]; *Van Slyke* v. *Van Slyke*, 186 Mich. 324, 330 [152 N.W. 921].)

In *Harlan* v. *Harlan*, 70 Cal.App.2d 657 [161 P.2d 490], plaintiff sued his wife for an annulment of their marriage as bigamous, alleging that she secured a Mexican divorce from her first husband but that the divorce was invalid for want of jurisdiction in the Mexican court. The trial court granted an annulment on the finding that the Mexican decree was invalid. The judgment was reversed on appeal. The appellate court held that notwithstanding that the defendant's Mexican decree was invalid, plaintiff was estopped from asserting its invalidity because he had aided and counselled the defendant in procuring it so that she might marry him. "To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding is a flagrant invitation to others to attempt to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status." (*Harlan* v. *Harlan*, 70 Cal.App.2d 657, 663-664 [161 P.2d 490].)

The New York Court of Appeals, in a case similar to the present one, reached the same conclusion as the court in the Harlan case. As a defense to his wife's suit for separate maintenance, the defendant contended that their marriage was bigamous on the ground that he had secured a Nevada divorce from his first wife but that the Nevada court lacked jurisdiction to enter the decree. Although the court regarded the Nevada decree as invalid, it refused to annul the marriage because the defendant, having procured the decree, was estopped from questioning its validity. "We cannot lose sight of the fact that the present defendant was himself the party who had obtained the decree of divorce which he now asserts

to be invalid and repudiates in order that he may now disown any legal obligation to support the plaintiff, whom he purported to marry. To refuse to permit this defendant to escape his obligation to support plaintiff does not mean that the courts of this State recognize as valid a judgment of divorce which necessarily is assumed to be invalid in the case at bar, but only that it is not open to defendant in these proceedings to avoid the responsibility which he voluntarily incurred.'' (*Krause* v. *Krause,* 282 N.Y. 355, 359-360 [26 N.E.2d 290]; *Matter of Lindgren,* 293 N.Y. 18, 22 [55 N.E.2d 849, 153 A.L.R. 936]; *Guilmain* v. *Guilmain,* 58 N.Y.S.2d 662, 666; *Picciano* v. *Picciano,* 65 N.Y.S.2d 410, 411; *Goodloe* v. *Hawk,* 113 F.2d 753, 756; *Saul* v. *Saul,* 122 F.2d 64, 70; *Bowen* v. *Finke,* 34 F.Supp. 235; *Chapman* v. *Chapman,* 224 Mass. 427, 433 [113 N. E. 359]; *Mohler* v. *Shank's Estate,* 93 Iowa 273, 282 [61 N.W. 981, 57 Am.St.Rep. 274, 34 L.R.A. 161].)

By the same reasoning, it is clear that defendant has estopped himself by his conduct from contesting the suit of his wife for separate maintenance on the ground that they are not lawfully married. He was the moving party in the Cuban action; he accepted the benefits of the decree therein by remarrying; and he now seeks to assert its invalidity to avoid his obligations to the plaintiff by virtue of that marriage. ''One who has invoked the exercise of a jurisdiction within the general powers of the court cannot seek to reverse its orders upon the ground of lack of jurisdiction.'' (*Harlan* v. *Harlan,* 70 Cal.App.2d 657, 662 [161 P.2d 490].) Defendant seeks to avoid estoppel in this case by reliance on his testimony that he went to a lawyer to get a divorce, that he did not know anything further about the action until he was informed that the divorce had been granted, and that he did not appear in the divorce proceedings. He contends that he was not the moving party in the action so as to be estopped by his conduct therein. This contention overlooks the facts that he initiated the proceedings, paid for the attorney's services in connection therewith, did not disclaim the divorce when informed that it was granted, and took advantage of the decree by marrying the plaintiff ten months later.

Defendant contends, however, that the public policy of the state requires the annulment of bigamous marriages whenever their bigamous character is discovered. We find no basis for such a sweeping application of public policy. There is a strong presumption that the second marriage is

valid in the absence of positive evidence to the contrary. (*Wilcox* v. *Wilcox,* 171 Cal. 770, 774 [155 P. 95] ; *Estate of Pusey,* 173 Cal. 141, 143 [159 P. 433] ; *Hamburgh* v. *Hys,* 22 Cal.App.2d 508, 509 [71 P.2d 301] ; *Immel* v. *Dowd,* 6 Cal.App.2d 145, 147 [44 P.2d 373].) Defendant does not indicate how any public purpose is served by the annulment of his marriage. The rights of his first wife are not affected thereby ; she has already secured a divorce from him in Florida and will not be injured by defendant's remaining married to plaintiff. Moreover, the state has already recognized the validity of defendant's marriage to plaintiff by its prosecution of defendant for bigamy because of his marriage to Miss Valle in 1945. His prosecution could be maintained only on the ground that his 1939 marriage to plaintiff was valid.

"It can no longer be said that public policy requires non-recognition of all irregular foreign divorces. We have recognized that the interest of the state in many situations may lie with recognition of such divorces and preservation of remarriages rather than a dubious attempt to resurrect the original. From a pragmatic viewpoint, judicial invalidation of irregular foreign divorces and attendant remarriages, years after both events, is a less than effective sanction against an institution whose charm lies in its immediate respectability. We think it may now be stated that the *general* public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees." (Vinson J., in *Goodloe* v. *Hawk,* 113 F.2d 753, 757; *Harlan* v. *Harlan,* 70 Cal.App.2d 657, 663-664 [161 P.2 490] ; *Krause* v. *Krause,* 282 N.Y. 355, 360 [26 N.E.2d 290].) We conclude that the public policy of this state requires the preservation of the second marriage and the protection of the rights of the second spouse "rather than a dubious attempt to resurrect the original" marriage.

Since the application of the doctrine of estoppel presupposes the entry of a final decree, cases involving remarriage after the entry of only an interlocutory decree (*Sullivan* v. *Sullivan,* 219 Cal. 734, 736 [28 P.2d 914] ; *Estate of Elliott,* 165 Cal. 339 [132 P. 439] ), or with the first marriage unaffected by any decree (*Anderson* v. *Anderson,* 7 Cal.2d 265 [60 P.2d 290] ; *Brandt* v. *Brandt,* 32 Cal.App.2d 99 [89 P.2d 171] ), are not in point.

The trial court erred in entering a judgment of annulment on defendant's cross-complaint. The judgment is reversed

and the cause remanded for a new trial on the issues of plaintiff's complaint.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.