[Civ. No. 20719.   Second Dist., Div. Two.   Apr. 6, 1955.]

Estate of NORRIS L. COLEMAN, Deceased.   MARGARET
R. RICHARDSON, Appellant, v. ADELE COLEMAN
PARMENTER, Respondent.

Thomas A. Wood and Herbert C. Meade for Appellant.

Maurice J. Hindin for Respondent.

FOX, J.—The crucial question on this appeal is whether the trial court erred in finding that petitioner Parmenter was the surviving spouse of the decedent Norris L. Coleman. Procedurally, the question arose by the filing of petitions for letters of administration by both parties to these proceedings. The Richardson petition is based on the fact that petitioner (who is a former wife of decedent) is the guardian of the persons and estates of their two minor sons. The Parmenter petition is on the theory that she is the widow; since, however, remarried to her former husband. The court granted the latter petition and denied the former. Mrs. Richardson appeals from the ensuing judgment.

During the holiday season of 1948, respondent, who was married and had resided in Los Angeles County for many years, went to Reno, Nevada, for the purpose of getting a divorce. She stayed at the home of her sister, who lived in Reno. She also had a daughter living in that city who was then enceinte. Respondent testified she intended to remain there indefinitely. She took her personal belongings with her, including her silverware and linens. She left no property in California and had no family ties remaining here.

Mr. Coleman, who was on temporary military leave, accompanied respondent to Reno. He asked her at that time to marry him. After remaining in Reno a few days, he returned to his military post. He frequently communicated with her in Reno, and again asked her to marry him. He requested her "to institute an action for divorce" and wired her $200 during the latter part of March, 1949, "with which to secure" the divorce. She was granted a divorce on April 1, 1949. Coleman was aware of that fact. She and Coleman were married in Reno 10 days later. They lived together as husband and wife. Mrs. Coleman returned to Los Angeles in May. Mr. Coleman resumed his military duties.

On February 20, 1950, respondent filed suit in Los Angeles County for divorce from Mr. Coleman. He filed an answer

in which he admitted the marriage. An interlocutory decree was granted to the plaintiff in July, 1950. That decree has not been reversed, vacated or set aside. At that hearing Mrs. Coleman testified she had resided in Los Angeles County continuously for about 23 years. In April, 1951, Mr. Coleman, while still on active duty as a member of the armed forces, died in Korea as a prisoner of war.

The trial court's decision is based primarily on the theory that the decedent would have been estopped to attack the validity of his marriage to respondent and that his minor children are thus also estopped. The facts justify and support the application of that doctrine.

■ The law is settled that "The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry." (*Rediker* v. *Rediker*, 35 Cal.2d 796, 805 [221 P.2d 1, 20 A.L.R.2d 1152], and cases there cited.) The instant case falls within both the second and third segments of this rule. ■ We shall first consider the application of the last portion of the rule to facts at hand. The evidence justifies the inference that decedent took respondent to Nevada for the purpose of securing a divorce so that she would be free to marry him and that he financed the expense thereof, at least to the extent of $200. These facts closely parallel those in *Harlan* v. *Harlan*, 70 Cal.App.2d 657 [161 P.2d 490]. There Harlan took a married woman to a Mexican attorney in Los Angeles and made arrangements with him to secure a Mexican divorce for her so that she might marry him. Harlan paid the attorney's fee. The parties then married. Later, Harlan brought an action for an annulment charging the Mexican decree was void. The court held he "was estopped from asserting its invalidity because he had aided and counseled the defendant in procuring it so that she might marry him." (See *Rediker* v. *Rediker, supra,* p. 806, where the Harlan case is discussed with approval.) The *Estate of Davis,* 38 Cal.App.2d 579 [101 P.2d 761, 102 P.2d 545], also closely parallels the case at bar, factually. There the deceased urged the respondent to go to Nevada, establish a residence for the sole purpose of securing a divorce so that she could then marry him. He agreed to take care of her expenses and the costs of the divorce. He went to Reno, assisted in the preparation of

the case, and married the lady on the day the divorce was granted. They then returned to California where they lived together until his death. The court said "the deceased . . . would have been foreclosed from denying the validity of the divorce or the subsequent marriage under the doctrine of quasi estoppel." (P. 585.) In *Margulies* v. *Margulies,* 109 N.J.Eq. 391 [157 A. 676], it is said that "One who induces a defendant to obtain a foreign divorce and pays the expenses thereof, and afterwards marries her, is precluded from attacking the validity of the decree." Other cases to the same effect where similar aid had been rendered are *Goodloe* v. *Hawk,* 113 F.2d 753 [72 App.D.C. 287]; *Saul* v. *Saul,* 122 F.2d 64 [74 App.D.C. 287]; and *Van Slyke* v. *Van Slyke,* 186 Mich. 324 [152 N.W. 921].

From these authorities it is clear that the deceased would have been estopped to deny the validity of respondent's Nevada divorce or his subsequent marriage to her.

■ The facts also bring the case within the second portion of the rule on estoppel, quoted, *supra,* from the Rediker case. Coleman knew the circumstances under which respondent secured her divorce, knew the decree had been granted and in reliance on such decree married respondent. Thus the case comes squarely within the principle of estoppel as applied in *Dietrich* v. *Dietrich,* 41 Cal.2d 497 [261 P.2d 269]. It was there pointed out (p. 505), as the foundation for the application of the doctrine, that Noah had "full knowledge of the circumstances" under which Carol had obtained a Nevada divorce from her husband, and "in reliance on such divorce" he "went through a marriage ceremony and lived with Carol as her husband for many years." This statement is precisely applicable to the case at bar except for the period of time the Colemans lived together as husband and wife after their marriage.

■ This brings us to the question whether such estoppel should be applied to Coleman's minor sons by his previous marriage. In the Davis case, *supra,* the court said (p. 585): "As a general rule, an heir, being in privity with the ancestor, is bound by an estoppel which was binding upon the ancestor." In that case the factual setting, as previously noted, is strikingly similar to the instant case. It was there held, in an heirship proceeding, that the children of the decedent by a former marriage were estopped to deny the validity of his marriage to a second wife, where he participated in assisting his second wife in getting a Nevada decree. See also *Union*

*Bank & Tr. Co.* v. *Gordon,* 116 Cal.App.2d 681, at page 690 [254 P.2d 644], where, in discussing the *Estate of Krone,* 83 Cal.App.2d 766 [189 P.2d 741], the court observed, citing the Davis case, *supra,* that "The children in the Krone case were estopped because as heirs of their ancestor, the first wife, they were in privity with her, and were thus bound by an estoppel which bound the ancestor." Under the principle and authority of the Davis case it is clear that the minor children of Coleman are bound by the estoppel which was binding upon him. Of course appellant, as their guardian, is in no better position than the children.

▓ With the complication of the Nevada decree of respondent disposed of, it becomes apparent that the evidence is ample to support the trial court's determination that respondent was the surviving spouse of Coleman and as such was entitled to administer his estate. This evidence is that respondent and Coleman went through a ceremonial marriage in Reno; that they thereafter lived together as husband and wife; that he filed an answer in her divorce suit against him in California admitting the marriage; that in granting her an interlocutory decree on July 21, 1950, the court found as of that date that they were husband and wife; that such decree has not been reversed, vacated or set aside, and remains in full force and effect, and that Coleman died on or about April 30, 1951.

Appellant attempts to challenge the validity of the California interlocutory decree of respondent from Coleman on the theory that respondent could not have been continuously a bona fide resident of this state for one year prior to February 20, 1950, the date on which she filed her complaint, since she had received a Nevada decree from her former husband which required residence there on April 1, 1949. The difficulty with this argument is that the trial court may well have believed respondent's testimony that she had resided here for more than 20 years, and that the imposition, if such there was, had been upon the Nevada court, the validity of whose decree Coleman would have been, and, therefore, his children were, estopped to question.

Appellant relies on *Bernhard* v. *Bank of America,* 19 Cal. 2d 807 [122 P.2d 892]; *Dillard* v. *McKnight,* 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835], and *McManus* v. *Bendlage,* 82 Cal.App.2d 916 [187 P.2d 854]. An examination of these cases reveals that none of them is pertinent to the issues in

the instant matter. They deal with the application of res judicata rather than quasi estoppel.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1955. Carter, J., was of the opinion that the petition should be granted.