[Civ. No. 18453.   First Dist., Div. Two.   May 26, 1959.]

Estate of NAOMI UNDERWOOD, Deceased.   CLAIRE SANTIAGO, Appellant, v. BERT E. UNDERWOOD, Respondent.

Harold D. Mefford for Appellant.

J. T. Harrington for Respondent.

DRAPER, J.—This is a proceeding to determine heirship. The trial court found that the sole surviving heirs are an adopted daughter and the surviving husband, and that the estate is wholly separate property of decedent. It ordered distribution of the intestate portion thereof in equal shares to daughter and husband (Prob. Code, § 221). The daughter appeals, contending that the marriage of respondent and decedent was invalid, and that Underwood thus has no right to share in distribution.

Appellant's petition alleged that respondent was the surviving husband of decedent, but relied upon a claimed antenuptial agreement as a bar to his sharing in the estate. The claim based upon this agreement has been abandoned on appeal. Respondent had been divorced in Nevada before marrying decedent. In cross-examination of respondent, it developed that Ellen, his former wife, had secured a divorce decree from him in Monterey County after respondent's marriage to the decedent, Naomi. Appellant then sought leave to amend her statement so as to deny that respondent was the surviving husband. The court took the motion to amend under submis-

sion and permitted introduction of evidence upon the validity of the Nevada divorce, subject to motion to strike.

The evidence so taken showed that respondent was divorced from Ellen May 22, 1950, and on the same day married Naomi in Reno. He and Naomi lived together as man and wife from that date until her death December 31, 1956. Respondent had worked in Reno before February, 1950. In February, 1950 (no date specified) he went to Reno and remained there until about a week after his divorce and remarriage, when he and Naomi left Reno for Salinas. Shortly thereafter he returned to Reno, where he worked for about 10 months before going back to Salinas, where he and Naomi lived until her death. After May 22, 1950, Ellen filed an action for divorce against respondent in Monterey County. Respondent answered, alleging the Nevada divorce, but later abandoned defense of the action. Interlocutory decree was granted to Ellen. Respondent was asked ''At the time that you married Naomi West you were not free to marry?'' and answered ''Not according to California laws, as I understand it.''

After hearing this testimony, the court denied appellant's motion to amend her petition and statement of interest, and struck the testimony relating to the Nevada divorce, on the ground that the information as to invalidity of that divorce ''was as readily available to you before we entered into trial or appeared in court'' as at time of trial.

This ruling was sound. Appellant made no showing of excusable mistake or surprise. Amendment of a pleading during trial is not a matter of right, but rests in the sound discretion of the trial court. (*Richter* v. *Adams*, 43 Cal.App. 2d 184, 187 [110 P.2d 486] ; *Dibblee* v. *Title Ins. & Trust Co.*, 55 Cal.App.2d 286 [130 P.2d 775].) We find no abuse of discretion in denying appellant leave to amend.

Even if it were erroneous, the ruling in no sense prejudiced appellant. We may look to the evidence to determine whether the claim sought to be pleaded by appellant had any merit. (*Davies* v. *Symmes*, 49 Cal.App.2d 433 [122 P.2d 102].) Before ruling, the trial court heard all the evidence offered relating to the claimed invalidity of respondent's marriage to decedent. But the evidence so admitted wholly fails to show such invalidity. The mere fact that respondent and decedent returned to Salinas a week after their Reno marriage is not determinative, particularly in view of the fact that respondent shortly returned to Reno and worked there for some time. There is no evidence that respondent went to Reno solely for

the purpose of procuring a divorce. ■ The fact that Ellen later procured a California divorce does not, alone, show invalidity of the Reno divorce and is not res judicata of the continued existence of the first marriage to the date of the second divorce. (*Rediker* v. *Rediker*, 35 Cal.2d 796, 800-804 [221 P.2d 1, 20 A.L.R.2d 1152].) ■ Of course, respondent's testimony that he was not free to marry Naomi ''according to California laws, as I understand it'' is a mere conclusion of law, not binding upon the court. Also, it related to his opinion as of the date of his testimony in 1957, rather than at the date of the remarriage in 1950 or at any other date during his marriage to Naomi. Since the evidence did not show invalidity of the Nevada divorce, appellant was not prejudiced by the court's striking that evidence and refusing to permit amendment of appellant's statement.

■ If, however, the evidence did show invalidity of the Nevada divorce, it also showed an estoppel to assert such invalidity. It is doubtful that the actions of Naomi to and including the date of her marriage to respondent effected an estoppel within the rule stated in *Rediker* v. *Rediker, supra,* at page 805. She was not a party to the Nevada divorce action nor is there any showing that she aided respondent to procure the decree or had knowledge of anything indicating that it might be invalid. However, the evidence does show that after the subsequent Monterey County decree Naomi drew checks in payment of the alimony there awarded to Ellen. Thus if the Monterey County decree of September, 1950, determined the invalidity of the Nevada divorce, as appellant contends, there can be little question that the conduct of Naomi, after knowledge of the Monterey decree, would estop her under the rationale of the established rule. (*Rediker* v. *Rediker, supra;* *Estate of Davis,* 38 Cal.App.2d 579 [101 P.2d 761, 102 P.2d 545] ; *Dietrich* v. *Dietrich,* 41 Cal.2d 497, 505 [261 P.2d 269] ; *Estate of Shank,* 154 Cal.App.2d 808, 811 [316 P.2d 710].) Estoppel of Naomi, the ancestor, operates to bar assertion of invalidity of the Nevada decree by her heir, appellant. (*Estate of Coleman,* 132 Cal.App.2d 137, 140 [281 P.2d 567] ; *Estate of Shank, supra,* p. 812.)

Order affirmed.

Kaufman, P. J., and Dooling, J., concurred.