[Civ. No. 26596.   Second Dist., Div. One.   Jan. 31, 1963.]

Estate of CLEOPATRIA FRANCES VINSON, Deceased. WILDA L. ROBERTSON et al., Claimants and Appellants, v. IDA J. KILGOUR et al., Claimants and Respondents.

544

Bailey & McWhinney and Ivan McWhinney for Claimants and Appellants.

Walter H. Young for Claimants and Respondents.

LILLIE, J.—By a petition to determine heirship, the daughters of Walter L. Vinson, claimed to have been a predeceased spouse of the above decedent (referred to hereinafter as Cleo), sought an interest in her estate under sections 228 and 229 of the Probate Code.[1] The appeal is from the order denying that they were entitled so to share.

Respondents are Cleo's sister and nieces and nephews. They contend that Walter L. Vinson and Cleo were not lawfully married and that sections 228 and 229 are both inapplicable. They further claim succession to all of the estate under section 225 of the Probate Code.[2]

---

[1]Section 228: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation."

Section 229: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the childern of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation."

[2]Section 225: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the

Upon the hearing below, the parties properly stipulated that the issue of heirship should be determined before any determination of the second issue as to the community or separate character of the property involved. The sole question on this appeal, therefore, is the marital status or relationship between Walter L. Vinson and Cleo since it is conceded that the parties bear the relationship to Walter or Cleo which is claimed by them.

Most of the material facts are not disputed. Cleo died intestate and without issue on January 30, 1960. She was predeceased by Walter who died testate on June 27, 1955. By his will, executed three years earlier and filed for probate in Los Angeles Superior Court, he expressly disinherited the appellants, issue of a marriage to Effie Vinson (dissolved by divorce in 1923) and left his entire estate to Cleo. Probate proceedings were thereafter conducted on the basis that Cleo was Walter's widow.

Following his divorce from Effie, in July of 1939, Walter contracted a second marriage—with Emily Jean. There was no issue of this marriage. On August 19, 1943, Emily Jean sued Walter for divorce in Los Angeles Superior Court; Walter was served and made an appearance. On October 4, 1943, Emily Jean was granted an interlocutory decree in the Los Angeles action. Thereafter Walter went to Nevada and on November 16, 1943, filed an action for divorce against Emily Jean. An appearance and waiver of notice were filed by Emily Jean, and a decree of divorce was granted to Walter by the Nevada court on November 16, 1943. On November 25, Walter and Cleo obtained a Nevada marriage license and were married the same day in Las Vegas. They then returned to Los Angeles and lived together as husband and wife until Walter's death.

In *Estate of Jackson,* 112 Cal.App.2d 16, 17-18 [245 P.2d 684], it is declared that "Section 228 of the Probate Code is confined to the interests of a 'spouse,' or 'predeceased spouse.' If there has been no marriage there can be no 'spouse,' or 'predeceased spouse.' ". The court recognized, however, that in certain circumstances (not there found to be present) belief in good faith that a valid marriage existed may create a putative marriage. (*Vallera* v. *Vallera,* 21 Cal.2d 681 [134 P.2d 761].)

survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation.''

Both sides rely on the *Jackson* case; but in listing the issues for resolution, they are completely at cross-purposes. According to appellants, these issues are as follows: (1) Can the Nevada divorce be collaterally attacked in the present proceeding? (2) Does respondent's evidence overcome the presumption that Cleo and Walter were lawfully married? (3) In the alternative, was Cleo a surviving *putative* wife whose estate is subject to distribution under sections 228 and 229? Respondents contend, on the other hand, that appellants are collaterally attacking the California decree through the medium of the Nevada divorce; more specifically, the first issue to be determined is the effect of the California decree on the Nevada divorce and marriage.

In only one area of the controversy do the parties appear to be in agreement, namely, that appellants had the burden of proving their claim of heirship (*Estate of Hobart*, 82 Cal. App.2d 502, 504 [187 P.2d 105]); appellants contend that they have met that burden.

Addressing ourselves first to the last-mentioned matter, respondents point out that appellants' burden is twofold: not only must they show a final dissolution of Walter's marriage to Emily Jean, but they must also prove that this occurred before his marriage to Cleo. Citing section 61 of the Civil Code and *Smith* v. *Smith*, 157 Cal.App.2d 46 [320 P.2d 100], they then argue that the purported marriage between Walter and Cleo was void *ab initio* since it occurred some 53 days after the interlocutory decree in the California action. Unlike the situation in *Smith*, where the other spouse was never served with papers in the Mexican proceeding, Emily Jean filed an appearance and waiver of notice—a fact which might fortify Nevada's claim of jurisdiction. But the *Smith* case is really no authority for respondents' position because it was also there held, as urged by appellants here, that in certain circumstances a party may be estopped to deny the validity of such a marriage and further estopped from setting up the defense of section 61.

It is now well settled that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage; the burden is then upon the party attacking the validity of the second marriage to establish that the first marriage has not been dissolved by divorce or otherwise. (*Estate of Smith*, 33 Cal.2d 279, 281 [201 P.2d 539].) Certified copies of the Nevada divorce and the Nevada marriage certificate were received in

evidence. ■ Too, there is the presumption, part of our statutory law, "That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage" (Code Civ. Proc., § 1963, subd. 30); and there is the further presumption, "That a person is innocent of crime or wrong" (Code Civ. Proc., § 1963, subd. 1). There was considerable evidence supporting an application of the presumption first mentioned. Walter and Cleo lived together as husband and wife for 12 years until Walter's death in 1955. They apparently considered themselves as husband and wife, being so known by everybody with whom they associated. They acquired several parcels of property as husband and wife. Walter executed a will in which he named Cleo as his wife; she acted as executrix thereof, maintained consistently that she was his widow and paid inheritance taxes on that basis.

Since a presumption alone is substantial evidence to support a judgment (*Estate of Miller*, 143 Cal.App.2d 544, 550 [229 P.2d 1005]), the burden was then upon respondents to overcome the above presumption or presumptions. In *Estate of Goldberg*, 203 Cal.App.2d 402, 406 [21 Cal.Rptr. 626], the court observed that it is "an extremely heavy burden, but the presumption in favor of the validity of a subsequent marriage is based on solid, strong public policy." Each presumption, of course, is rebuttable; accordingly, in *Goldberg* and other cases cited by respondents it is properly held that it is for the trial court to determine whether the presumption in question has been overcome. ■ In the present case, however, by introducing evidence to rebut the presumption, they are in effect attacking the validity of the Nevada divorce decree. Since Cleo, their ancestor, would have been estopped so to do (*Redicker* v. *Redicker*, 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152]), respondents likewise are estopped. (*Estate of Underwood*, 170 Cal.App.2d 669 [339 P.2d 154].)

■ According to the holding in *Redicker* (35 Cal.2d 796, 805), "The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry." Certain facts, not seriously challenged, bring the case within the second portion of the above rule on estoppel.

■ There was evidence that Cleo met Walter in 1943 at which time she knew that he was married to Emily Jean. She knew of Walter's separation from Emily Jean and the

subsequent removal of his residence to a motel. She knew that Walter had been served with process in the California action. She knew that he went to Nevada to secure a divorce from Emily Jean; immediately after Walter had secured his divorce, she joined him in Nevada and married him. Thereafter she lived with him for 12 years. The case, therefore, comes squarely within the principle of estoppel as applied in *Dietrich* v. *Dietrich*, 41 Cal.2d 497 [261 P.2d 269]. It was there pointed out (p. 505) that Noah had ''full knowledge of the circumstances'' under which Carol had obtained the Nevada divorce from her husband, and ''in reliance on such divorce'' he ''went through a marriage ceremony and lived with Carol as her husband for many years.''

The decision below, as we see it, did not involve any estoppel on Cleo's part but rather that respondents, as her heirs, were not estopped. Thus, the trial court made the following finding in part: ''The Court further finds that Cleopatria Frances Vinson relied on the void marriage of November 25, 1943, as the sole basis upon which to determine her marital status and this being a void marriage, the Court further finds that the sister, nieces, and nephews of Cleopatria Vinson are not estopped from contesting the invalidity of the marriage of Cleopatria Frances Vinson and Walter Vinson . . .'' This was clearly error. (*Estate of Underwood, supra,* 170 Cal.App.2d 669.) In *Underwood* (p. 672) it is said: ''Estoppel of Naomi, the ancestor, operates to bar assertion of invalidity of the Nevada decree by her heir, appellant. [Citations.]''

The above finding is also open to criticism in that it declares the Nevada marriage to be ''void.'' As in *Dietrich,* ''we are not considering the 'force or effect' of the Nevada decree except as such consideration is necessarily incident to the holding that Noah, because of his conduct with relation to that decree, has no standing to question it.'' (41 Cal.2d 497, 505.) The court was there replying to the argument that the public policy stated in section 150.1 of the Civil Code (divorce in other jurisdiction of no effect where parties domiciled in California) should govern the problem. Respondents here do not rely on section 150.1; but they do call attention to the provisions of section 150.2 of the same code. The *Dietrich* case answers the claim that the latter section is applicable.

Not only do respondents ask us to consider the question of public policy, but they also ask us to consider the equities of the case. In fairness to respondents, this consideration is urged principally as it relates to the putative wife theory which, of

course, we do not reach in view of our determination of the other issue in the case. In this connection, respondents point out that Walter's will specifically disinherited appellants from whom, it seems, he was practically estranged. A similar contention was found to be without merit in *Estate of Bryant*, 3 Cal.2d 58, 69 [43 P.2d 529] : ''Petitioners took as statutory heirs under the provisions of section 1386, subdivision 8 of the Civ. Code [now Prob. Code, § 228], and it was not in the power of the predeceased husband by any act of his to defeat the purpose of said code section. The will did no more than to vest the community interest of the testator in the wife. That act marked the limit of his domination over said property. The law made final disposition of whatever remained over subsequent to his death.''

No other points require consideration.

The order is reversed with instructions to the trial court to revise its findings and conclusions of law in conformity with the views herein expressed and to enter an amended order accordingly.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied February 26, 1963, and respondents' petition for a hearing by the Supreme Court was denied March 27, 1963.