Mathilde ROCKER, as wife of Louis P. Rocker, wage earner, Claimant, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Appellee.

No. 217, Docket 30138.

United States Court of Appeals
Second Circuit.

Argued Jan. 11, 1966.

Decided March 8, 1966.

Max Leichtman, New York City, for appellant.

Lawrence W. Schilling, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, James G. Greilsheimer, Sp. Asst. U. S. Atty., on the brief), for appellee.

Before MEDINA, MOORE and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

Mathilde Rocker appeals from a judgment, upholding the denial by the Secretary of Health, Education and Welfare of her application for Social Security benefits as the "wife" of wage earner, Louis P. Rocker.[1] We affirm.

The record in this case reveals a marital history not uncommon, unfortunately, in contemporary society. Mathilde and Louis were married in New York in September 1918. After raising four children and living together for more than thirty years, they were legally separated. In April 1960, Louis moved to Las Vegas, Nevada, and, after residing there for five months, he sued for divorce. The Nevada decree purporting to dissolve Louis and Mathilde's marriage recited that Mathilde had been duly and regularly served with summons and process in the action, had failed to appear and Louis had proved that "for more than six weeks immediately preceding the commencement of [the] action and ever since, [Louis] has been an actual and bona fide resident of the County of Clark, State of Nevada * * *."

Mathilde did not passively accept this determination. Instead, she instituted suit in the Supreme Court of New York for a judgment declaring the Nevada decree invalid and affirming her continued status as Louis' wife. While Louis failed to appear in this action, the New York Court found that the Nevada decree was based upon defective jurisdiction because copies of the summons and complaint in that divorce proceeding had not been personally served upon Mathilde; they had been left, it was determined, in the mail slot of the door of her apartment.[2] For this reason, the Court ruled that Louis and Mathilde "are husband and wife and that said marriage has not been dissolved by any Court of competent jurisdiction in this or any other State of the United States."

Armed with the New York judgment, Mathilde, on January 8, 1963, having recently attained the age of sixty-two, filed an application for Social Security benefits as Louis' "wife."[3] The Chief of the Claims Authorization Section of the Social Security Administration denied Mathilde's claim because the law of Louis' domicile, Nevada, was controlling and that state would find the marriage had been effectively terminated. Upon review, the Chief of the Reconsideration Section of the Social Security Administration and, later, a Hearing Examiner, after a full hearing, arrived at the same result. When the Appeals Council of the Bureau of Hearings and Appeals refused further consideration because "a formal review would not result in a modification of the conclusion reached by the Hearing Examiner," and the Hearing Ex-

---

1. Mathilde Rocker commenced this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Upon cross-motions for summary judgment, the District Court granted her motion and remanded the case for further administrative consideration; on reargument, however, Judge Bryan set aside his prior ruling and granted the government's motion for summary judgment upon finding that the record supported the conclu-sion that Mathilde, under Nevada law, was not Louis' "wife" when her application for benefits was filed.

2. The affidavit of service filed in the Nevada action stated that Mathilde had been personally served.

3. Mathilde claimed Social Security benefits as Louis' "wife" pursuant to § 202 (b) of the Social Security Act, 42 U.S.C. § 402(b).

aminer's holding consequently became the decision of the Secretary of Health, Education and Welfare,[4] Mathilde brought the instant action. We are satisfied that the District Judge properly refused to overturn the administrative denial of Mathilde's claim.

## I.

Foreseeing that problems relating to marital status would arise in the administration of the Social Security Act, Congress in § 216(h) (1) (A), 42 U.S.C. § 416(h) (1) (A),[5] established a two-step procedure for determining whether a claimant was the lawful spouse of a currently insured individual at the time the application was filed and thereby entitled to benefits under the Act. At the outset, a determination had to be made as to the domicile *of the insured at the time the claimant filed her application.* Then, in accordance with the law of that domicile, it was necessary to decide whether the claimant would be considered the "wife" of the insured at the time she filed for benefits.

It is true that in reviewing the claim, the Hearing Examiner failed to articulate a precise finding as to Louis' domicile on January 8, 1963, the date of Mathilde's filing. But, while an explicit determination would have facilitated our consideration of this appeal, its absence is not fatal. We believe that the finding was implicit in the Examiner's ultimate conclusion for he proceeded to the second step of the statutory analysis and determined that the Nevada divorce was valid on the crucial day even when considered in the light of the subsequent New York decree. The Examiner, with his expertise, was, without question, familiar with the two-step nature of the statutory test; indeed, he recited the relevant portions of the Act in his opinion.

Thus, if there is substantial evidence in the record to support the implicit finding, we cannot properly overturn the conclusion that Louis was a domiciliary of Nevada at the time Mathilde filed her claim for Social Security benefits. In so holding, we are guided by § 205(g) of the Act, 42 U.S.C. § 405(g), which defines the limited scope of our review. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." See also Pirone v. Flemming, 183 F. Supp. 739 (S.D.N.Y.1959), aff'd per curiam, 278 F.2d 508 (2d Cir. 1960); Shapiro v. Ribicoff, 316 F.2d 262 (2d Cir. 1963). Nor is there any purpose in sending the case back simply to make an explicit finding on something we can properly conclude from the record. S. E. C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); see Fassilis v. Esperdy, 301 F.2d 429 (2d Cir. 1962).

The evidence before the Examiner disclosed that in early 1960, Louis, who had been a self-employed stock broker, liquidated his business and sold his seat on the New York Stock Exchange to Eastman Dillon, Union Securities and Company ("Eastman Dillon"). Louis informed his customers of the sale, noted that in his absence he was leaving their accounts in good hands and, in order to bring about continuity of business, explained that he planned "to 'get off [his] feet' for several months and take a vacation on the advice of [his] doctor * * * [and] after [his] return [would] be associated with [Eastman Dillon]." Whatever Louis' motivations were in writing as he did to his former customers, the fact is that shortly after the sale, Louis moved to Las Vegas and became a customer's man in Eastman Dillon's branch office there.

It also appears that, although Nevada required a residence of only six weeks

---

4. See 20 C.F.R. § 404.951.

5. Section 216(h) (1) (A) provides in pertinent part:

   "An applicant is the wife * * * of a fully or currently insured individual for purposes of this sub-chapter if

   the courts of the State in which such insured individual is domiciled at the time such applicant files an application * * * would find that such applicant and such insured individual were validly married at the time such applicant files such application * * *."

to establish a domicile for divorce, Louis actually resided in Las Vegas for five months before instituting his divorce action in September 1960.[6] Mathilde, on the other hand, testified before the Hearing Examiner that her son had told her that Louis' personal effects were in an apartment in New York on December 7, 1960. But, in contrast, there was evidence that on September 15, 1960, Louis registered to vote in Nevada, on November 4, 1960, he married one Norma Wiesen in that state and, on February 21, 1961, he applied for old age insurance benefits in the Social Security District Office in Las Vegas, giving notice that he was terminating his employment and embarking upon a vacation of travel.[7] Specifically, with respect to Louis' domicile on the critical day when Mathilde filed her claim for Social Security benefits, the record contained his written statement, executed at the request of the Social Security Administration, on March 29, 1964, in Jerusalem, Israel, on a form issued and approved by the Administration, and reciting that Nevada "was and still is my legal residence."[8]

We recognize, as we have indicated, that in conducting the administrative hearing, the trial examiner was not obliged to apply the rigid rules of evidence utilized in a formal trial.[9] Indeed, the rules governing the admission of evidence in administrative proceedings are considerably more relaxed.[10] Consequently, hearsay is generally admissible if reliable and may be given such probative force as is warranted. N. L. R. B. v. Remington Rand, 94 F.2d 862 (2d Cir.), cert. denied, 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540 (1938); John W. McGrath Corp. v. Hughes, 264 F.2d 314 (2d Cir.), cert. denied, 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959). In the instant case, we believe the Examiner did not improperly credit Louis' written assertion of a Nevada domicile in response to the Administration's queries. It was the kind of evidence which a reasonable mind might accept; see N. L. R. B. v. Remington Rand, supra, 94 F.2d at 873, and John W. McGrath Corp. v. Hughes, supra, 264 F.2d at 316. Louis really had little interest in the outcome of a proceeding to determine Mathilde's eligibility for

---

**6.** The Manager of Blair House so testified at the divorce proceeding; he said that he had observed Louis as a "permanent guest" of Blair House daily for a period of five months, except for a two week interval when the Manager was on vacation.

**7.** Other evidence before the Examiner showed that Louis had applied for a passport before Nevada granted the divorce; that sometime in 1961, Louis left Nevada for an extended trip on the European continent (which might explain why registered letters which Mathilde sent to his Las Vegas address were returned undelivered); that during his absence from New York, Louis maintained in New York a bank account from which payments were made to Mathilde; that an employee of Eastman Dillon periodically mailed these checks at Louis' direction; moreover, that Louis employed a New York firm of accountants to file his income tax returns and utilized, as a mailing address, his brother-in-law's residence in New York.

**8.** This statement was admitted by the Hearing Examiner over Mathilde's objection. The Examiner correctly noted,

"the rules of evidence which are ordinarily followed in the courts are not observed here."

Louis' written statement together with the other evidence indicating Louis' intention to be domiciled in Nevada were credited by the Chief of the Reconsideration Section of the Social Security Administration whose opinion concluded that "Mr. Rocker was domiciled in Nevada at the time Mathilde V. Rocker filed her application for wife's benefits on January 8, 1963."

It should be noted that no objection was made to the admissibility before the Hearing Examiner of the exhibit containing the opinion of the Chief of the Reconsideration Section although it was partially grounded on Louis' written statement.

**9.** The Regulation which defines generally the admissibility of evidence at Social Security Administrative Hearings provides: "Evidence may be received at the hearing even though inadmissible under rules of evidence applicable to court procedure. * * *" 20 C.F.R. § 404.928.

**10.** See, generally, II Davis, Administrative Law, §§ 14.05, 14.07 (1958).

Social Security benefits. Indeed, his statement—written on a form prepared by the Department of Health, Education and Welfare and forwarded to him in Israel for completion—indicated clearly on its face that the document was to be utilized "in determining the right [of Mathilde] to or the amount of Federal old-age * * * benefits." Moreover, above the line on which Louis affixed his signature, there appeared in black print the warning: "Knowing that anyone making a false statement or representation of a material fact [in connection with an application for Social Security benefits] * * * commits a crime punishable under Federal law, I certify that the above statements are true." Given this and other evidence which the Examiner apparently credited, and the absence of anything in the record to indicate that Louis ever returned to resume residence in New York after leaving in 1960, we would be exceeding our reviewing authority if we found that there was not substantial evidence before the Hearing Examiner to support his conclusion that on and after January 8, 1963, Mathilde was not entitled to benefits as Louis' "wife."

## II.

In considering the second prong of the statutory analysis required by § 216(h)(1)(A),[11] a determination was necessary as to the status of Louis and Mathilde's marriage under the law of Nevada, in light of the New York judgment.

██ It is clear that if Mathilde had not been properly served in Louis' divorce action, Nevada would deny the effectiveness of its own decree because of defective jurisdiction. La Potin v. La Potin, 75 Nev. 264, 339 P.2d 123 (1959). But, here, a conflict existed between the affidavit of the process server filed in the Nevada divorce suit, stating that Mathilde had been personally served, and Mathilde's testimony in the New York suit, asserting that process had been left in her mailbox. Since this dispute was essentially one of credibility which the

Hearing Examiner, based on evidence before him, resolved against Mathilde, we cannot fault his conclusion that Nevada obtained jurisdiction over Louis' suit for divorce.

Finally, we must consider the effect of the New York declaration pronouncing the Nevada divorce invalid. The Nevada Supreme Court in Colby v. Colby, 78 Nev. 150, 369 P.2d 1019, cert. denied, 371 U.S. 888, 83 S.Ct. 186, 9 L.Ed.2d 122 (1962), held that for purposes of its internal law, Nevada will uphold its own decree in the face of a contradictory judgment by a sister state. On facts not dissimilar to those presented here, the Court in Colby observed that "Analysis demands the conclusion that [the out-of-state spouse] does not here ask us to merely accord full faith and credit to the [foreign state's] decree [of invalidity]. Instead, we are asked to give it greater credit and respect than the prior decree of our own State lawfully entered. Full faith and credit does not require, nor does it contemplate, such action from us." 78 Nev. at 157, 369 P.2d at 1023.

██ It would not be advisable, we believe, for this Court to attempt to resolve sister-state conflicts in matrimonial actions in a collateral proceeding for Social Security benefits. See Wondsel v. Commissioner, 350 F.2d 339 (2d Cir. 1965); Estate of Borax v. Commissioner, 349 F.2d 666 (2d Cir. 1965), cert. denied, 86 S.Ct. 1064 (1966). By defining "wife" as it has in Section 216(h)(1)(A), Congress has deliberately chosen to make federal holdings in this area rest upon determination of marital status by the appropriate state. And, upon our understanding that Nevada is entitled "to give to its divorce decrees absolute and binding finality within the confines of its borders," Williams v. State of North Carolina (II), 325 U.S. 226, 239, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577 (1945) (concurring opinion), we believe that Judge Bryan correctly resolved the conflict-of-laws problem by determining that Nevada, as the "appropriate" state, would uphold its own decree. He, therefore,

11. See n. 5, supra.

properly approved the Hearing Examiner's conclusion that Mathilde was not Louis' "wife" within the meaning of the Social Security Act and consequently was not entitled to the benefits which flowed from such status.

We have considered the other contentions advanced on this appeal and find them to be without merit.

Affirmed.

MOORE, Circuit Judge (concurring in the result).

Again arises the problem presented where an executive officer or administrative agency of government has to make a finding of fact as to the matrimonial status of a party whose status is most material to the proper adjudication of the matter before the officer or agency. In a field of the law as confusing as that of matrimonial status in the now fifty states in which the courts themselves have reached so many seemingly inconsistent—and frequently curious— results, little wonder that situations akin to the situation here continue to arise. Illustrative are *Wondsel* and *Estate of Borax,* supra. Unfortunately, the desideratum of the mathematical certainty of an algebraic formula resulting in its satisfying Q. E. D. is not to be found— at least here.

1. The law is clear. Mathilde Rocker was entitled to Social Security benefits only *if* she were the wife of Louis Rocker on January 8, 1963, and *if* the courts of the State in which Louis was then domiciled could find that he was "validly married" to Mathilde at that time. The "law" is the only constant. Two variables (uncertain domicile and uncertain courts) have been injected into the formula. The law of mathematics tells us that no solution under these circumstances is possible. However, such circumstances are commonplace to courts and hearing examiners who frequently have to reach solutions insoluble except by them.

2. I accept as definite the validity of Louis' Nevada divorce decree of October 10, 1960. Louis' course of conduct in 1960 may well have been contrived to give an appearance of genuine residence in Nevada. However, at least he worked in that State (to be sure in a branch office of his New York brokerage house); and he had a room (to be sure in a guest house); and did register to vote, although he apparently never voted, but he did wait a respectful five months before instituting divorce proceedings in Nevada. And there was no proof that on the day of the divorce he had a return trip ticket to New York in his pocket. This routine was varied to the extent of obtaining a pre-divorce passport so that an extended European "vacation" might be made by him (or them). Nor was Louis ever quite unmindful of his long New York residence and his nostalgia to return because he told his customers in writing that after his return from his "vacation" he looked forward to a continued relationship with them. But New York has ever been a lodestone for many. In any event, it is not surprising to find Louis and his newly acquired wife Norma quickly abandoning Nevada for foreign travel, little thinking or caring where some court years hence would declare his domicile to be on January 6, 1963.

3. But just as Nevada had taken Louis and his marital status under its protective wing, so did New York protect Mathilde and reward her (March 14, 1961) for her loyalty by declaring Louis' Nevada decree to be void, which meant that Norma was Louis' wife probably everywhere in the world except New York and that Mathilde was his wife in New York.

4. To resolve the issue at hand, it is unnecessary for me to decide more than a few (to me) fundamentals.

(a) Louis should not have more than one wife at a time.

(b) Louis and Norma well may have been in January 1963 undecided as be-

tween Nevada, New York or very possibly many other places in the world for residential purposes.

(c) The material facts are in the record before us. Despite the failure of the Hearing Examiner to make a finding as to Louis' domicile on January 8, 1963, this court can reach its own conclusion that a finding that New York was his state of domicile was not required by the facts in the record. Nor should we stigmatize this world traveler as a "man without a country."

(d) New York's decree did not destroy Nevada's decree or Louis' marriage to Norma.

(e) Merely because I cannot subscribe to our oft-repeated cliche about "substantial evidence" where there is none or indulge in my colleagues' creation of an "implicit" finding of domicile where there is none is no reason why I should disregard the need to decide whether for Social Security purposes Norma or Mathilde was *the* wife. If they had both filed on January 8, 1963, Norma would have and should have prevailed.

Therefore, for practical reasons, I concur in the affirmance of the District Court's decision and in the result reached by my colleagues except for their belief that Hearing Examiners in the Social Security field have an "expertise" in matters domiciliary, evidentiary or matrimonial, which makes their findings so conclusive that appellate review is presumptuous. However, Social Security examiners have to decide the actual situations before them and cannot enjoy metaphysical speculations as to how various courts under various hypotheses might resolve the apparent conflict between Nevada and New York. In my opinion, the decision that Mathilde did not have a Social Security wifely status with Louis on January 8, 1963, is correct.