Amy C. MOTT, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

Civ. A. No. 276–66.

United States District Court
D. New Jersey.
March 14, 1967.

Lawrence S. Schwartz, Belleville, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Jonathan Kohn, Asst. U. S. Atty., for defendant.

## OPINION

WORTENDYKE, District Judge:

This action is brought under the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Secretary of Health, Education and Welfare that plaintiff is not entitled to wife's benefits under the Social Security Act based on the earnings record of Maurice B. Mott. The defendant has moved for summary judgment.

### PROCEDURAL FACTS

Application by the plaintiff for such benefits was filed on August 27, 1962. The application was denied October 12, 1962 upon the finding that no benefits could be paid to plaintiff at that time because Maurice Mott was not entitled to old-age or disability benefits. A second application was filed by the plaintiff on December 28, 1964, following the award to Maurice Mott of old-age retirement benefits on December 11, 1964. Plaintiff's second application was denied by the District Office on February 5, 1965 upon the determination that the plaintiff was not the wife of Maurice Mott (hereinafter wage-earner) within the meaning of 42 U.S.C. § 416(b) and that plaintiff had accepted a post-marital property settlement with the wage-earner which estopped her to contest the wage-earner's divorce from her in the State of Nevada in April 1950. Plaintiff's request for reconsideration, filed August 10, 1965, was denied upon such

reconsideration on September 29, 1965. After a Hearing held November 19, 1965 in compliance with plaintiff's request, the Hearing Examiner rendered his decision that the plaintiff and wage-earner were divorced; that she ceased to be entitled to support from him as of February 6, 1953, the date of execution of the post-marital property settlement; and that plaintiff was " * * * not entitled to wife's or divorced wife's benefits on the earnings record of Maurice Mott * * * ". Plaintiff's request for review was denied by the Appeals Council; thus rendering the decision of the Hearing Examiner the final decision of the Secretary, subject to review by this Court.

## FACTS

Plaintiff was married to the wage-earner on March 24, 1923. On September 22, 1944, the wage-earner left the New Jersey residence which he then shared with the plaintiff and their two children. On May 7, 1945, the Essex County (New Jersey) Domestic Relations Court awarded to the plaintiff against her husband the sum of $22 per week as support for herself and her minor daughter. That award was reduced to $20 in January 1946, and in June 1948 was further reduced to $15 per week. The evidence before the Hearing Examiner disclosed that the wage-earner never fully complied with any of the foregoing support orders. The record further discloses that on or about November 19, 1949 the wage-earner left the State of New Jersey and established a permanent residence in Los Angeles, California, travelling by way of Las Vegas, Nevada.

In divorce proceedings instituted by the wage-earner in Nevada in February 1950, plaintiff was personally served with process in Essex County, New Jersey but did not appear in the divorce action. Upon being served, plaintiff advised the Nevada Court by letter that she believed the wage-earner was not a Nevada resident, and that in representing to the contrary the wage-earner was committing a fraud upon the Nevada court. The letter further informed that

court that plaintiff was without financial means to employ a lawyer to contest the divorce action. She was advised by the Nevada court that unless she appeared in the action through an attorney, it could not take cognizance of her charge of fraud. A divorce was granted to the wage-earner on April 10, 1950.

After his divorce from the plaintiff, the wage-earner remarried and was living in California with his second wife. On February 6, 1953, plaintiff and the wage-earner entered into a written Post-Marital Property Settlement Agreement in Los Angeles, California which recited and provided as follows:

(1) The wage-earner was divorced from plaintiff on April 10, 1950 after personal service of the complaint in the divorce proceedings upon the plaintiff;

(2) Plaintiff and her divorced husband desired to settle their mutual claims;

(3) Each of the parties released and absolved the other of all obligations, claims and demands, including rights in the estate of the other;

(4) The parties thereto stipulated that the agreement "may be introduced by either party hereto in full satisfaction of the order of any Court involving the marital rights and obligations of the parties hereto * * * ";

(5) The wage-earner agreed to pay to the plaintiff $1227 and to transfer to her as beneficiary a life insurance policy in the amount of $1,000;

(6) The wage-earner agreed to pay $50 to plaintiff's attorney.

Plaintiff contended before the Hearing Examiner that the Nevada divorce decree was invalid because the residence requirements for the maintenance of the divorce action were never complied with. Plaintiff alleged that the wage-earner stayed in Las Vegas for only one day, arranging for an attorney to commence divorce proceedings against her, and that

the wage-earner then proceeded immediately to California. Plaintiff indicated that the complaint in the divorce action was signed by "Charles B. Mott" rather than Maurice B. Mott, the correct name of her then husband, and she contended that this misnomer evidenced that her then husband was not present at the divorce hearing.

With respect to the Post-Marital Property Settlement Agreement of February 6, 1953, plaintiff contended before the Hearing Examiner that the property settlement evidenced thereby was obtained under duress in that the settlement was delayed for a year during which she had been temporarily residing in California, and that she was then without funds and anxious to return to New Jersey to care for her ill son. Plaintiff also testified that, despite the recital in the Agreement, she had no legal advice in connection therewith and that no legal fees were paid to any one in her behalf. Nevertheless, she made no attack upon the divorce until after she had filed her claim for benefits in this Social Security proceeding, at which time the domicile of the wage-earner was in California.

### DOMICILE

■ The single question posed by defendant's motion for summary judgment is whether the courts of the State of California, wherein the wage-earner was domiciled at the time the plaintiff filed her application for Social Security benefits, would find that the plaintiff and the wage-earner were validly married at the time the plaintiff filed her application. The determination of this question is governed by 42 U.S.C. § 416(h) (1) (A) which provides in pertinent part that an applicant is the wife of a fully and currently insured individual " * * * if the courts of the State in which such insured individual is domiciled at the time such applicant files an application * * would find that such applicant and such insured individual were validly married at the time such applicant files such application * * *". Thus, " * * * a

determination [must] be made as to the domicile *of the insured at the time the claimant filed her application.* Then, in accordance with the law of that domicile, it [is] necessary to decide whether the claimant would be considered the 'wife' of the insured at the time she filed for benefits." Rocker v. Celebrezze, 358 F.2d 119, 121 (2nd Cir. 1966).

The parties concede that on December 28, 1964, when the plaintiff filed her claim for benefits, the wage-earner's domicile was in the State of California.[1] The Hearing Examiner was therefore required to determine the status of the marital relationship between the plaintiff and the wage-earner under the law of California. It is significant that the Hearing Examiner made *no specific finding* as to the State of the wage-earner's domicile at the time plaintiff made her application of December 28, 1964. Such a finding is necessary in accord with the two-fold determination required by 42 U.S.C. § 416(h) (1) (A). See *Rocker* v. Celebrezze, Ibid. See also *Rocker* at p. 125, where Circuit Judge Moore, in a Concurring Opinion, disapproves of an "implicit" finding in this regard. That there was no such *specific* finding becomes unimportant here *only because* the parties conceded that the wage-earner was domiciled in California on December 28, 1964.

### ESTOPPEL

■ Defendant contends that the California courts would estop the plaintiff from asserting the invalidity of this Nevada divorce decree on the theory that the plaintiff had acquiesced in such decree and had recognized its validity by acts or conduct which are inconsistent with an assertion of invalidity. With this, I agree. See Smith v. Smith, 157 Cal.App.2d 46, 320 P.2d 100 (1958); Spellens v. Spellens, 49 Cal.2d 210, 317 P. 2d 613 (1957). However, before it can be determined that the state of the California law concludes the issue, the legal effect of estoppel in the California courts must be ascertained. In Harlan v. Har-

---

1. See defendant's brief, page 8 and plaintiff's brief, page 1.

lan, 70 Cal.App.2d 657, 161 P.2d 490, 493 (1945) the Court held:

> " * * * not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of but merely closes the mouth of the complainant.
>
> \*   \*   \*   \*   \*
>
> The principle is known as the doctrine of acquiescence, often referred to as quasi estoppel."

Therefore, it is readily evident that to refuse to permit plaintiff to escape the binding effect of the Nevada divorce decree, which she expressly recognized, or acquiesced in by executing the Agreement, does not mean that the courts of California would also accord full faith and credit to the Nevada decree. Such refusal only means that the plea of jurisdictional defect was not then open to the plaintiff in these proceedings to avoid the consequences which she had voluntarily accepted by the execution of the Agreement which directly relates to the Nevada decree. See Krause v. Krause, 282 N.Y. 355, 26 N.E.2d 290 (1940) relied on in Rediker v. Rediker, 35 Cal.2d 796, 221 P. 2d 1, 20 A.L.R.2d 1152 (1950).

The second part of the two-fold statutory determination which the Hearing Examiner was required to make under 42 U.S.C. § 416(h) (1) (A), i. e., that the courts of California " * * * would find that such applicant and such insured individual were validly married * * ", is not resolved by the fact that the plaintiff is merely estopped under the facts of this case. The question is not whether the plaintiff had legal capacity under California law to attack the Nevada decree (such attack not being determinative of the validity of the marriage), see Rediker v. Rediker, Ibid., but rather whether the plaintiff was the wife of the wage-earner at the time of her application so as to entitle her to benefits under 42 U.S.C. § 416(h) (1) (A). There was substantial evidence before the Hearing Examiner from which he might conclude that the plaintiff was estopped from asserting the invalidity of the Nevada divorce decree; however, such estoppel would have only been applicable to, and effective in, a California proceeding under the facts of this case. Such a conclusion by the Hearing Examiner is not tantamount to a finding that the parties were not validly married in California at the time of the filing of plaintiff's application. Exploration into decisional law to determine what the courts of California would find is appropriate.

### VERIFICATION OF COMPLAINT

The Hearing Examiner does not indicate whether he considered, or attached any significance to, the fact that the Complaint in the Nevada divorce proceeding was verified by "Charles B. Mott" as opposed to the caption of the action which read "Maurice B. Mott." [2]

■■ Under Nevada law, NRS (Nevada Revised Statutes) 125.020, there must be a verified complaint, i. e., " * * * by complaint, under oath * * * ". Since defective verification may be waived by proceeding to trial without proper objection, Ware v. Stafford, 206 Cal.App.2d 232, 24 Cal.Rptr. 153 (1962), plaintiff appears to have suffered no prejudice, even though California also requires verification of pleadings.[3] Pleadings in California are liberally construed.[4]

However, since the plaintiff testified at the Hearing that this was neither the wage-earner's name nor his handwriting,[5] the Hearing Examiner should have given consideration to the following question: If the wage-earner was not an actual and bona fide resident of Nevada under Nevada law, would this fact require a determination that California would not give full faith and credit to this Nevada divorce decree, even though such decree had never been collaterally attacked in a California court by the plaintiff? See Brill v. Brill, 38 Cal.App. 2d 741, 102 P.2d 534 (1940). It can be

---

2. See Exhibit 35.

3. Cal.Code Civ.Proc. § 446.

4. Cal.Code Civ.Proc. § 452.

5. See Hearing Record, page 64.

seen from the thrust of the last-stated question that a determination thereof would go most directly to a resolution of the validity of the marriage in California as opposed to the mere legal capacity of the plaintiff under California law to assert a claim of invalidity.

### MOTION FOR SUMMARY JUDGMENT

Though the Hearing Examiner did not specifically find that plaintiff would not be found to be the wage-earner's wife under California law, he should have so found * * * and could have by proper application of California law to the Nevada divorce decree. For this reason, I find that there is substantial evidence in the record as a whole to support the decision of the Secretary. Accordingly, defendant's motion for summary judgment is granted.

Present an appropriate order in accordance with this Opinion.