**Amy C. MOTT, Appellant,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

No. 16785.

United States Court of Appeals
Third Circuit.

Argued Nov. 8, 1968.

Decided Feb. 10, 1969.

David Ben-Asher, Irvington, N. J., for appellant.

Carolyn E. Arch, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., Newark, N. J., U. S. Atty., on the brief), for appellee.

Before KALODNER, FORMAN and STAHL, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of New Jersey[1] granting the motion of the Secretary of Health, Education and Welfare for summary judgment and affirming the Secretary's decision that Amy C. Mott, the appellant, is not entitled to wife's benefits under Section 202(b) (1) of the Social Security Act.[2] That determination rested on the ultimate conclusion that at the time of her application for benefits, appellant was not the wife of the wage earner, Maurice B. Mott, the latter having procured a decree of divorce from appellant in Nevada on April 10, 1950. It is the validity of that decree which is presently in dispute.

Appellant and Maurice B. Mott were married on March 24, 1923 in New York, and resided together in New Jersey until September 1944, when Mr. Mott left appellant and their two children. On May 7, 1945 the Essex County Juvenile and Domestic Relations Court ordered him to pay $22 per week for the support of appellant and their daughter, an order which was subsequently modified twice.[3] From the evidence adduced before the Hearing Examiner it appears that Mr. Mott never complied with any of these orders. During the month of November 1949, he left New Jersey to establish a permanent residence in California, apparently traveling by way of Nevada and stopping there for at least a short period of time.

On February 27, 1950, Mr. Mott initiated divorce proceedings in Clark County, Nevada. Appellant was personally served with process in New Jersey, but chose not to appear. She did, however, notify the Nevada court by letter that she believed Mr. Mott was not then a bona fide resident of Nevada and that "[a]ny divorce he may secure in Nevada will be a reflection on the integrity of the State of Nevada." The court advised her that it could not consider any of her contentions unless she appeared in the action through an attorney. Mr. Mott was granted a divorce on April 10, 1950, after appellant refused to sign an appearance and waiver form sent to her by Mr. Mott's attorney.

In 1952 appellant went to California in order to attempt to persuade Mr. Mott, who in the interim had remarried, to fulfill his obligations under the New Jersey support orders. Apparently failing in this endeavor, appellant and Mr. Mott, on February 6, 1953, entered into a post-marital property settlement agreement, which provided in pertinent part:

1) Mr. Mott obtained a Nevada divorce from appellant on April 10, 1950;

2) the parties mutually desired a final settlement and adjustment of their property rights;

3) each party released the other from all obligations and liabilities, including debts, owing to the other;

4) the agreement might be introduced by either party "in full satisfaction of the order of any Court involving the marital rights and obligations of the parties * * *";

5) Mr. Mott agreed to pay appellant the sum of $1224 in fourteen installments;[4]

6) Mr. Mott agreed to assign and transfer to appellant his interest and

---

1. The opinion of the District Court is found in Mott v. Secretary of Health, Education and Welfare, 265 F.Supp. 680 (D.N. J.1967).

2. 42 U.S.C. § 402(b) (1).

3. On January 7, 1946, the amount was reduced to $20 per week, and on June 16, 1948 to $15 per week.

4. This part of the agreement was amended to provide for a total sum of $1227, to be paid in sixteen installments.

title to a life insurance policy in the sum of $1,000;

7) Mr. Mott would pay appellant $50 for attorney fees.

Appellant avers that she has never instituted court proceedings to attack the divorce or the post-marital agreement because she has been without sufficient funds to engage counsel. On August 27, 1962, however, she filed with the Social Security Administration an application for wife's insurance benefits on the earnings record of Mr. Mott. This application was denied on October 12, 1962, on the ground that Mr. Mott was not at that time entitled to old-age or disability insurance. Later Mr. Mott was awarded $127 a month in old-age retirement benefits and appellant filed the instant application, asserting that the Nevada divorce was invalid due to lack of jurisdiction. On February 5, 1965, the Philadelphia Payment Center denied the claim for the reason that appellant was estopped from denying the validity of the divorce by reason of the post-marital agreement. Her request for reconsideration was denied on September 29, 1965, but she was granted a hearing before the Hearing Examiner of the Bureau of Hearings and Appeals on November 19, 1965. After receiving appellant's evidence and testimony the Hearing Examiner rendered his decision that appellant was not entitled to wife's or divorced wife's benefits on the earnings record of Mr. Mott. Plaintiff's request for review was denied by the Appeals Council and thereby the determination of the Hearing Examiner became the final decision of the Secretary. Appellant then sought review in the District Court under 42 U.S.C. § 405(g),[5] but the court granted the Secretary's motion for summary judgment and affirmed the decision of the Hearing Examiner. This appeal followed.

Appellant's major contention throughout has been that the Nevada divorce granted Mr. Mott was invalid because he was not in residence in that state for a sufficient time to confer jurisdiction on the Nevada courts. She has also argued that the post-marital property settlement agreement into which she entered in 1953 should not work an estoppel with respect to her contesting the validity of the divorce since she was "the victim of duress and undue influence and was forced into the signing of the agreement by her circumstances."[6] The Hearing Examiner took appellant's testimony on these contentions but ultimately concluded that:

"It [the divorce decree] was issued out of a Nevada Court. It is regular on its face, recites jurisdictional facts over the parties and the matrimonial res. It is a decree of a sister State and is entitled to full faith and credit. On February 6, 1953, for a valuable consideration in hand paid to claimant, she conceded in writing, the regularity of the divorce decree and gave it full faith and credit. She did more— she released her divorced husband of his obligations under the order to support her. She stated in that agreement that she signed it *without* undue influence, fraud or coercion or misrepresentation. Both the divorce decree and the property settlement agreement are, until vacated and set

5. 42 U.S.C. § 405(g) reads in pertinent part:

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides * * *"

6. More particularly, appellant alleges that she was then in an impecunious state, that Mr. Mott delayed her in California for approximately a year without affirmative response to her requests for compliance with the support orders, and that she was forced to sign the agreement in order to get back to New Jersey to care for her sick child.

aside, in a Court of competent jurisdiction, binding upon the Hearing Examiner."

█ The District Court correctly found that California law was applicable in reaching its decision as to the status of the Nevada divorce, for 42 U.S.C. § 416(h) (1) (A) provides that:

"An applicant is the wife, husband, widow or widower of a fully or currently insured individual for purposes of this subchapter if the courts of the State in which such insured individual is domiciled at the time such applicant files an application * * * would find that such applicant and such insured individual were validly married at the time such applicant files such application * * *."[7]

It is conceded that at the time appellant filed her application for benefits, Mr. Mott, the insured, was a domiciliary of California.

Despite its agreement with the Secretary's argument that appellant would be estopped by the California courts from attacking the divorce because of conduct inconsistent with an assertion of invalidity,[8] the District Court found that this did not terminate the inquiry, stating:

"The question is not whether the plaintiff had legal capacity under California law to attack the Nevada decree (such attack not being determinative of the validity of the marriage), see Rediker v. Rediker, Ibid.,

but rather whether the plaintiff was the wife of the wage-earner at the time of her application so as to entitle her to benefits under 42 U.S.C. § 416(h) (1) (A). There was substantial evidence before the Hearing Examiner from which he might conclude that the plaintiff was estopped from asserting the invalidity of the Nevada divorce decree; however, such estoppel would have only been applicable to, and effective in, a California proceeding under the facts of this case. Such a conclusion by the Hearing Examiner is not tantamount to a finding that the parties were not validly married in California at the time of the filing of plaintiff's application. Exploration into decisional law to determine what the courts of California would find is appropriate."[9]

█ The California courts have consistently held that the procedural bar created by an estoppel has no impact on the validity of the act sought to be challenged,[10] in this case, the Nevada divorce decree. It thus follows that a California court could have found that Mr. Mott and appellant were still married and that the divorce decree would not conclusively be entitled to full faith and credit.

Apparently the District Court recognized the scope of the problem on which it commented:

"[T]he Hearing Examiner should have given consideration to the following question: If the wage-earner was not an actual and bona fide resident of Nevada under Nevada law,

---

7. It has been held that for purposes of this section the law of the state of domicile means the law as it has been pronounced by the state's Supreme Court. Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55 (4 Cir. 1967).

8. It is at least doubtful, however, that appellant's conduct would estop her in the California courts. As the California Supreme Court stated in Rediker v. Rediker, 35 Cal.2d 796, 221 P.2d 1, 6, 20 A.L.R. 2d 1152 (1950):
"The validity of a divorce decree cannot be contested by a party who has

procured the decree or a party who remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry."
It is clear that appellant fits into none of these categories, and in fact has consistently denied the validity of the divorce decree.

9. 265 F.Supp. at 684.

10. See Spellens v. Spellens, 49 Cal.2d 210, 317 P.2d 613 (1957); Rediker v. Rediker, 221 P.2d 1 (1950).

would this fact require a determination that California would not give full faith and credit to this Nevada divorce decree, even though such decree had never been collaterally attacked in a California court by the plaintiff? \* \* \* It can be seen from the thrust of the last-stated question that a determination thereof would go most directly to a resolution of the validity of the marriage in California as opposed to the mere legal capacity of the plaintiff under California law to assert a claim of invalidity. \* \* \*

"Though the Hearing Examiner did not specifically find that plaintiff would not be found to be the wage-earner's wife under California law, he should have so found \* \* \* and could have by proper application of California law to the Nevada divorce decree. For this reason, I find that there is substantial evidence in the record as a whole to support the decision of the Secretary. \* \* \*" 11

 An analysis of the California cases, however, indicates that the evidence introduced by appellant, accepting all of her allegations as true, might well lead a California court to hold that the Nevada courts were without jurisdiction to grant Mr. Mott a divorce. The appropriate legal standard was enunciated in Crouch v. Crouch,12 where the California Supreme Court stated that a divorce decree of a sister state may *always* be collaterally attacked on the ground of lack of jurisdiction over the parties or the subject matter. The Hearing Examiner's emphasis on the facial regularity of the Nevada decree as commanding full faith and credit is also undermined by the *Crouch* decision, for the court there stated:

"The fact \* \* \* that a recital of jurisdiction is contained in the decree should not be, of itself, a certificate of legal correctness for what has been done." 13

If the Hearing Examiner had recognized the above stated admonition in passing upon appellant's claim, it cannot be said with certainty that his decision would have been the same, for the implications of appellant's testimony and the evidence she introduced raised a sharp question of Mr. Mott's required legal residence in Nevada. She testified that Mr. Mott had been in Nevada only one day before embarking for California—just long enough to engage an attorney to institute the divorce proceedings. She further asserted that the signature on the divorce complaint was not that of her husband, but a stand-in for him, with the direct implication that Mr. Mott was not present in Nevada on February 27, 1950. That complaint, which was made part of the administrative record, bears the signature "Charles B. Mott" rather than "Maurice B. Mott." This in itself could be considered strong evidence in support of appellant's contention. In addition, appellant brought forth other evidence to show that Mr. Mott was resident in California rather than Nevada during the period in question, including documentation of his applications for a California driver's license and automobile registration based on his residence in that state. None of appellant's assertions were contradicted.

 In light of all of these factors, it would appear necessary that another hearing be held to determine whether Mr. Mott was actually a bona fide resident of Nevada prior to the granting of his divorce. Only then may it be determined whether, under California law, appellant was the wife of Mr. Mott at the time of her application as defined in 42 U.S.C. § 416(h) (1) (A).14

Hence the order of the District Court of March 30, 1967 granting summary

11. 265 F.Supp. at 684–685.

12. 28 Cal.2d 243, 169 P.2d 897 (1946).

13. Id. at 901.

14. On appeal, it has been alternatively argued that appellant is entitled to benefits as the divorced wife of Mr. Mott under 42 U.S.C. § 402(b) (1) (D). As a basis for this claim, appellant points to the unsatis-

judgment in favor of the Secretary of Health, Education and Welfare will be vacated with direction to remand this case to the Secretary for further proceedings consistent with this opinion.

fied order of support of the New Jersey court. The Hearing Examiner decided against appellant on this issue, reasoning that the post-marital property settlement agreement extinguished Mr. Mott's support obligations and that appellant's contention that it was obtained by duress could not prevail. Thus he concluded that appellant could not qualify as a "divorced wife" within the purview of the statute.

Examination of appellant's complaint in the District Court, however, reveals that this issue was not raised therein. The only reference to it in the record appears from a letter addressed to the District Judge on March 17, 1967 by appellant's attorney drawing his attention to the failure to mention it in his opinion and asking for "clarification" of the matter. In this court the appellant reiterated her contention, made before the Trial Examiner, that the post-marital agreement was obtained by duress. Even assuming that the issue is now properly before this court we must conclude that appellant's allegations, as summarized in note 6, supra, simply do not amount to duress as a matter of law and that the Secretary correctly declined to recognize that appellant had a valid claim as a divorced wife under 42 U.S.C. § 402(b) (1) (D).