[Civ. No. 66691. Second Dist., Div. Two. Mar. 15, 1983.]

Estate of JAMES ARTHUR BIRCH, Deceased.
GUDRUN ROSWITHA BIRCH, Petitioner and Respondent, v.
DOROTHY M. BIRCH et al., Contestants and Appellants.

GUDRUN ROSWITHA BIRCH, Petitioner and Respondent, v.
DOROTHY M. BIRCH et al., Objectors and Appellants;
THOMAS ARTHUR BIRCH, a Minor, Claimant and Respondent.

## COUNSEL

John E. Miller, in pro. per., and Ludwig H. Gerber for Contestants and Appellants and Objectors and Appellants.

Young, Henrie, Humphries & Mason and Bert W. Humphries, Jr., for Petitioner and Respondent.

Bernard V. Ousley for Claimant and Respondent.

## OPINION

ROTH, P. J.—James and Dorothy Birch were married in Texas in December of 1942. They had two children, Robert and Margaret. In apparent anticipation of dissolution of the marriage, the couple, then living temporarily in Germany, entered into a written property settlement agreement in 1962. On April 5, 1963, a judgment of divorce between them was entered in the State of Chihuahua, Republic of Mexico. After the sufficiency of that judgment was recognized by the German authorities,[1] and in civil and religious ceremonies on February 8 and 15, 1964, respectively, James married Gudrun Birch in Germany.

On February 2, 1970, Dorothy sought and obtained through counsel a "ratification"[2] of the described judgment of divorce, and on March 11 of the same year entered into a further agreement with James, portions of which recited that:

---

[1] The procedure alluded to is one based on a prerequisite for marriage between a German citizen, like Gudrun, and a "foreign national."

[2] The ratification provided in part that:

"I, DOROTHY MAE ARCHER BIRCH, . . . hereby confer this special power to Lic. CARLOS MONGES CALDERA, to represent me before the Courts of the State of Chihuahua, Republic of Mexico, with relation to a divorce action heretofore instituted by my husband, JAMES A. BIRCH, against me, and to declare in my name my absolute conformity with and ratification of the proceedings in said divorce action . . . and hereby submit myself expressly to the jurisdiction of the Tribunals of the Republic of Mexico and petition that the same be as binding upon me and my heirs as though originally solicited by me."

". . . WHEREAS, that said Property Settlement Agreement was incorporated into a Judgment of Divorce instituted by JAMES ARTHUR BIRCH dissolving the bonds of matrimony between the parties by the First Civil Court of Bravos District, Chihuahua, Republic of Mexico on the 5th of April, 1963 (File 840/953); and

"WHEREAS, Paragraph 13 of the above-stated Property Settlement Agreement and Judgment of Divorce was subsequently modified by both parties on the 1st day of April, 1967; and . . .

"WHEREAS, the specified Judgment of Divorce was retrospectively ratified and Accord with the Judgment rendered pursuant thereto by DOROTHY M. ARCHER BIRCH on the 2d day of February, 1970 in the First Civil Court of Bravos District, Chihuahua, Republic of Mexico (Certificate No. 358520); and

"WHEREAS, the impending remarriage of DOROTHY M. ARCHER BIRCH necessitates that additional and superseding agreements be established between both parties to resolve unfulfilled obligations and revise responsibilities as set forth in previous agreements. . . ."

Thereafter, on March 15, 1970, she married Ralph Gentry in Nevada. That union was annulled in June of 1971 on her uncontested petition.

Effective February 1, 1971, James and Gudrun adopted Thomas Birch as their son in Ventura County Superior Court.

In August or September of 1977, James executed a will which, essentially, left his estate to Gudrun or to Thomas without provision for his former family.[3] On October 8, 1980, James died.

Gudrun petitioned to have the 1977 will admitted to probate and, subsequently, pursuant to Probate Code section 650.[4] Dorothy, joined by her children

---

[3]Specifically the will provided in pertinent part that:
"SECOND: I am married to GUDRUN ROSWITHA BIRCH, and all references in this Will to 'my wife' are to her. There is one (1) child of our marriage, THOMAS ARTHUR BIRCH, born May 11, 1970. I was married to DOROTHY M. BIRCH, and there are two (2) children the issue of that marriage; MARGARET ANN BIRCH and ROBERT ARTHUR BIRCH.
"THIRD: I give my estate to my wife if she survives me for thirty (30) days, and if she does not, to my son THOMAS ARTHUR BIRCH if he survives me. In the event my son THOMAS ARTHUR BIRCH does not survive, I give my estate as follows:
"1. Five percent (5%) of the net value of my estate as finally determined by the regularly appointed California Inheritance Tax Referee, to my daughter MARGARET ANN BIRCH if she survives me, and if not, this share shall pass in accordance with subparagraph 2 hereof.
"2. The rest of my estate to KRIMHILDE BRYANT of Newport Beach, California."
[4]"(a) A surviving spouse . . . may file a petition in the superior court in the county in which the estate of the deceased spouse may be administered alleging that administration of all or a part of the estate is not necessary for the reason that all or a part of the estate is community property . . . passing or belonging to the surviving spouse . . ."

Robert and Margaret, opposed both petitions, contending that she and not Gudrun was James' surviving spouse, the purported Mexican divorce being in her view invalid.

In the early stages of the proceedings, John E. Miller was appointed special administrator of James' estate; Bernard Ousley was appointed guardian ad litem for the minor adopted son, Thomas.

Both matters were ultimately tried on a consolidated basis without a jury after the trial court determined that the special administrator should not participate.[5] The resulting judgment, on which the appeal is predicated, was to the effect, in substance, that Gudrun was James' surviving spouse, that Thomas was his lawfully adopted son, and that the 1977 will should be admitted to probate, with Gudrun as its executrix.[6]

It is contended here the trial court erred concerning Gudrun's status as surviving spouse, and that it likewise improperly excluded the special administrator. We are satisfied neither contention can be sustained[7] and, accordingly, affirm the judgment.

---

[5]The special administrator's position was that he should be involved in any of the proceedings wherein the issue of the identity of James' surviving spouse was present. Since that question could more simply be first addressed under Probate Code section 650, he made no claim to be a party to the will contest. When the trial court decided he need not contribute in either of the matters, his objection to the section 650 petition was stricken.

[6]The trial court's findings of fact provided in part that:

"2. GUDRUN ROSWITHA BIRCH was married to JAMES ARTHUR BIRCH in civil and church ceremonies on February 8, 1964 and February 15, 1964, respectively . . .

"3. THOMAS ARTHUR BIRCH was on 2/1/71, and thereafter, the legally adopted son of JAMES ARTHUR BIRCH and GUDRUN ROSWITHA BIRCH.

"4. DOROTHY is estopped to question the validity of the Mexican divorce decree because of her conduct in relation thereto:

"a. She appeared on 2/2/70 by counsel in said proceedings, submitted herself 'expressly to the jurisdiction of the tribunals of the Republic of Mexico' and petitioned that the judgment therein 'be as binding upon me and my heirs as though originally solicited by me.'

"b. She expressed her continued reliance on the Mexican judgment by Exhibit 'X' executed by her 3/11/70 and therein alluded to her impending marriage.

"c. She married on 3/15/70 in reliance on said Mexican judgment of divorce.

And because: Gudrun's marriage to Decedent was in good faith and was continuously to Decedent's death without her knowledge of any claim by anyone of said marriage's invalidity.

So that: California Public Policy requires recognition of the marriage of Decedent to Gudrun rather than his prior marriage to Dorothy.

"5. MARGARET ANN MANNING and ROBERT ARTHUR BIRCH and JOHN E. MILLER, Special Administrator, have no standing to question the validity of the Mexican Decree."

In so deciding, the trial court, with Gudrun's acquiescence, elected not to pursue the section 650 petition beyond the point of concluding Gudrun should prevail on the surviving spouse question.

[7]Correlative to the primary issues articulated are the claims of Robert and Margaret in attacking James' divorce decree and the question of the status of Thomas, James' adopted son. As will be seen, the first of these fails on the principle of privity; the second is resolved owing to the disposition in favor of Gudrun as surviving spouse.

Respecting the first of these claims, it is accepted by Dorothy that "the authorities are practically unanimous in favor of the proposition that a remarriage estops the party entering into it from denying the validity of previous divorce." (*Chilcott* v. *Chilcott* (1967) 257 Cal.App.2d 868, 870 [65 Cal.Rptr. 263]; see also *Spellens* v. *Spellens* (1957) 49 Cal.2d 210 [317 P.2d 613]; *Rediker* v. *Rediker* (1950) 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152]; *Avnet* v. *Bank of America* (1965) 232 Cal.App.2d 191 [42 Cal.Rptr. 616]; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, pp. 4955-4958.) She nevertheless maintains the rule is of no moment here, since her marriage to Ralph Gentry was annulled, such that it never existed for purposes of the rule's application. That that contention cannot be sustained is evident, we think, from the observations made in *Sefton* v. *Sefton* (1955) 45 Cal.2d 872, 875-876 [291 P.2d 439], to the effect that "[T]he doctrine of 'relation back' is not without its exceptions. . . . [I]n cases involving the rights of third parties, courts have been especially wary lest the logical appeal of the fiction should obscure fundamental problems and lead to unjust or ill-advised results . . . . Therefore, whatever may be said for the fiction of 'relation back' as a general principle in annulment cases, it must be deemed to apply only where it promotes the purposes for which it was intended." (Cf. *Estate of Le Mont* (1970) 7 Cal.App.3d 437 [86 Cal.Rptr. 810].) No such purpose is present in the instant matter. Accordingly, the trial court properly determined Dorothy was estopped from asserting the judgment of divorce was invalid. It also correctly concluded Dorothy's children, being in privity with both her and James, who, like Dorothy, would have been estopped from a like assertion, were similarly bound. (See fn. 7.) (See *Adoption of Sewall* (1966) 242 Cal.App.2d 208, 216-217 [51 Cal.Rptr. 367]; *Estate of Vinson* (1963) 212 Cal.App.2d 543, 547 [28 Cal.Rptr. 94]; *Estate of Underwood* (1959) 170 Cal.App.2d 669, 672 [339 P.2d 154]; *Estate of Coleman* (1955) 132 Cal.App.2d 137, 140-141 [281 P.2d 567]; *Estate of Davis* (1940) 38 Cal.App.2d 579, 585 [101 P.2d 761].)

It is also urged the special administrator should have been permitted to participate in the section 650 petition, since he had "formed the conclusion that Gudrun was not at any time the spouse of Decedent nor at the time of his death the surviving spouse of Decedent and, therefore, was not entitled to claim any assets of the estate on the contention that the said assets were community as between herself and Decedent."

The trial court, however, was of the opinon the special administrator's proper function did not encompass such a predisposition but, instead, contemplated a neutral posture as between Gudrun and Dorothy, thus dispensing with any need for his involvement. In support of the assertion such opinion was error, and that it was the duty of the administrator to defend in the premises, reference is made to the decision in *Estate of Kessler* (1948) 32 Cal.2d 367, 368-369 [196 P.2d 559], and to that upon which for the purpose it relies, *In re*

*Heydenfeldt* (1897) 117 Cal. 551, 553 [49 P. 713]. As authority for the opinion's soundness, on the other hand, we are reminded of the observations on the point made in *Estate of Denman* (1979) 94 Cal.App.3d 289, 292 [156 Cal.Rptr. 341], *Estate of Miller* (1968) 259 Cal.App.2d 536, 545 [66 Cal.Rptr. 756], and *Estate of Bixby* (1956) 140 Cal.App.2d 326, 334 [295 P.2d 68].

But whether in another context we would find more appropriate a conclusion in favor of an active or an essentially indifferent personal representative, we are persuaded that under the circumstances present here no resolution of the question in terms of the alternatives posed is required, since it is clear to us nothing has been shown or offered to be shown which would even suggest the trial court's judgment should be reversed. Once it was adequately established that James obtained a Mexican divorce decree upon which Dorothy relied for her remarriage to Ralph Gentry, the issue whether that decree was invalid was foreclosed from further consideration in respect either of her or of the special administrator, unless it were also shown the marriage to Gentry was procured through the fraud of James.[8] And while a half-hearted effort to the latter end was made at trial, the record is devoid of any evidence which would sustain the conclusion. The special administrator did not prior to his exclusion, nor on his motion for new trial, nor does he now, represent what further evidence on the issue would or could have been produced had he been a participant. Accordingly, if the trial court's conclusion on the point was in error, no prejudice resulted therefrom.

The judgment appealed from is affirmed.

Beach, J., and Gates, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 29, 1983.

---

[8]The suggestion of the special administrator that he is not bound in this fashion because a personal representative is not subject to estoppel is not well taken, since the exemption relied upon encompasses at best only an estoppel attributable to his decedent and not, as here, one imposed against another party. Stated otherwise, when it was established by whatever appropriate means, including estoppel, that Dorothy was not the decedent's surviving spouse, that determination resolved every issue then before the trial court not only as to the individual contestants but as well to those appearing in a representative capacity.