BRENDA KAYE GORDON, APPELLEE, V. GARRIE WARD GORDON, APPELLEE; STATE OF NEBRASKA, DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

438 N.W.2d 762

Filed April 21, 1989.    No. 87-494.

Robert M. Spire, Attorney General, and Royce N. Harper for appellant.

Michael G. Heavican, Lancaster County Attorney, and Janice Lipovsky for appellee Brenda Kaye Gordon.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

ROWLANDS, D.J.

This is an appeal from an order of the district court for Lancaster County, Nebraska, finding that a claimed assignment of child support to the Nebraska Department of Social Services (DSS) on account of aid to dependent children (ADC) benefits received by a relative caretaker (not the mother designated in the support order) was null and void. DSS was further ordered to return all child support money received from the clerk of the district court to the appellee Brenda Kaye Gordon. We affirm.

On November 20, 1975, the marriage of Brenda Kaye Gordon and Garrie Ward Gordon was dissolved. Pursuant to the decree, Brenda was awarded the permanent control and custody of the minor children of the parties, Bryan Ward Gordon, born March 25, 1972, and Nathan Terrel Gordon, born June 8, 1973. Garrie was ordered to pay $130 per month to Brenda as child support, which amount would be reduced to $65 per month when Bryan died, became emancipated, married, or reached age 19.

The facts in this case are not in dispute, and the record consists of stipulated facts and only limited testimony. The parties stipulated that during 1986, Bryan began residing with a relative, Betty Gordon. Betty made application for and received ADC on account of her caretaker status for Bryan. Brenda did not apply for ADC benefits for either of her children, nor did she assign her rights to collect child support payments from Garrie to DSS.

DSS filed the following documents against Brenda's account with the clerk of the district court for Lancaster County: (1) a notice of assignment filed May 1, 1986, effective April 24, 1986; (2) a notice of partial termination of assignment filed October 7, 1986, effective October 1, 1986; (3) an affidavit of lien in the amount of $2,063 filed October 7, 1986; and (4) a notice of assignment filed October 14, 1986, effective October 3, 1986. The net result of these filings was that the clerk of the district court disbursed all of the child support payments received from May of 1986 to February of 1987 to DSS rather than to Brenda.

It should be initially stated that this situation could easily have been avoided had DSS sought and obtained an assignment of Brenda's child support benefits on behalf of Bryan in the amount of $65 per month while Bryan resided with his relative who was receiving ADC. In fact, Brenda filed such an assignment on May 28, 1987, directing the clerk to transmit to DSS up to $65 per month, but not more than 50 percent of any child support payment made during any calendar month if the amount paid was less than the court ordered amount of $130. Brenda also assigned to DSS 50 percent of any child support arrearage which accrued while the assignment was in effect.

We further note that neither party raises any constitutional issue in this proceeding. The instant case involves only a statutory interpretation of Neb. Rev. Stat. § 43-512.07 (Cum. Supp. 1986), which provides in pertinent part:

> The application for an acceptance of an aid to dependent children payment by a parent, other relative, or a custodian shall constitute an assignment of the right to child and spousal support payments and arrearages, from the inception of the court order, to the Department of Social Services up to the amount of aid to dependent children paid to the recipient. Child and spousal support payments made pursuant to a court order shall be paid to the Department of Social Services upon notice by the department to the clerk of the district court that the child is a recipient of public assistance. Upon receipt of notice from the department of such assignment of support payments, each clerk of the district court shall transmit the payments received to the department in accordance

with the cooperative agreement provided for in section 43-512.05 without the requirement of a subsequent order by the court.

DSS asks this court to find that the acceptance of ADC benefits by Bryan's relative constituted an assignment by operation of law of Brenda's right to receive child support payments from her ex-husband pursuant to a valid decree of dissolution which had not been modified. For the reasons hereafter stated, we decline to so hold.

It is axiomatic that under Nebraska law the right to receive child support payments pursuant to a decree of dissolution is a property right of the custodial parent. Neb. Rev. Stat. § 42-364(4) (Reissue 1988). The custodial parent becomes a judgment creditor who may collect or enforce the child support judgment by execution and the means authorized for collection of money judgments. Release of child support judgments must be approved by the court which rendered the judgment. Neb. Rev. Stat. § 42-371 (Reissue 1988).

Although the payments, when received, are to be used for the benefit of the minor child or children, the custodial parent determines how and when the money should be spent. See Introducer's Statement of Intent, L.B. 612, Judiciary Committee, 89th Leg., 1st Sess. (Mar. 25, 1985). If there is a misapplication of those funds, § 42-364(4) provides the following remedy:

> Upon application, hearing, and presentation of evidence of an abusive disregard of the use of child support money paid by one party to the other, the court may require the party receiving such payment to file a verified report with the court as often as the court shall require stating the manner in which such money is used.

While DSS cites a number of decisions from other jurisdictions which contain language that child support is the right of the child and not its custodian, *Stewart v. Stewart*, 160 Ga. App. 463, 287 S.E.2d 378 (1981); *Armour v. Allen*, 377 So. 2d 798 (Fla. App. 1979); and *Mason v. Mason*, 148 Or. 34, 34 P.2d 328 (1934), even a cursory reading of those decisions discloses that they do not mandate the result sought by DSS in this action.

In *Stewart*, the Georgia Court of Appeals held that the conduct of the custodial parent in withholding visitation rights would not deprive the child of the right to support, reasoning that

> [c]hild support is the right of the child and not of its custodian; "[n]either the wife nor the civil courts can take away this right that inheres expressly in the children." . . . The conduct of the custodian cannot deprive the child of this right to support any more than the custodian can waive it for the child or contract it away.

(Citations omitted.) 160 Ga. App. at 463, 287 S.E.2d at 379.

*Armour v. Allen* involved an attempt by divorced parents to contract away the child's right to receive support from the father if he refrained from contacting his ex-wife and visiting his child. Obviously, the Florida court's statement that child support is a right which belongs to the child must be read in context with the holding that parents may not contract away their dual obligation imposed by the state to support a minor child.

Finally, the *Mason* decision dealt with a situation where a mother who had obtained custody of her children by virtue of a divorce decree, but who abandoned them, was held estopped from later claiming child support from her ex-husband, who had supported the children in the absence of their mother.

In *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939), we recognized that provisions for the maintenance of children in divorce cases are for the benefit of the child or children, and not for the benefit of the parent, but further stated: "Where a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, marriage, or the reaching of majority, such payments become vested in the payee as they accrue." *Id*. at 443, 286 N.W. at 342. The holding in *Wassung* that child support payments are a vested right of the payee in a dissolution action as they accrue and that such payments may be changed only by modification of the decree in the court which entered it on the basis of a material change in circumstances has repeatedly been stated by this court. See, *Ferry v. Ferry*, 201 Neb. 595, 271 N.W.2d 450

(1978); *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978); *Schrader v. Schrader*, 148 Neb. 162, 26 N.W.2d 617 (1947).

The record is clear that Brenda at all relevant times remained the payee under the decree of dissolution. Neither her child Bryan nor his relative Betty had an assignable property interest in Brenda's child support at the time DSS filed its notice of assignment.

It is well established that the intention of the assignor must be to transfer a present interest in a debt, fund, or subject matter. If this is clearly expressed, the transaction is an assignment; otherwise not. 6A C.J.S. *Assignments* § 53 (1975); *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979). Further, an assignee acquires only the rights of the assignor. *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980). Since Betty had no present interest in the child support payments to be paid to Brenda under the decree, the district court was correct in holding that Betty's assignment to DSS was a nullity. Accord *State ex rel. Crews v. Parker*, 319 N.C. 354, 354 S.E.2d 501 (1987), holding that an ADC applicant assigns only the right that he or she possesses.

Under Neb. Rev. Stat. § 43-512.08 (Reissue 1988), the county attorney or an authorized attorney for DSS had the right to intervene in this dissolution proceeding to amend the order of support to require that child support payments attributable to Bryan be remitted to DSS or to bring a separate action for child support for Bryan in district court against either or both parents, pursuant to Neb. Rev. Stat. § 43-512.04 (Reissue 1988). DSS chose neither alternative. In its effort to create a shortcut through established statutory guidelines and legal precedent of this court, DSS has caused the expenditure of valuable legal talent and judicial resources without result. While reduction of bureaucratic redtape is commendable, this court may not ignore basic tenets of Nebraska law or established property rights for the sake of administrative convenience.

AFFIRMED.