CONTRA COSTA COUNTY EX REL. ELEANOR K. PETERSEN, APPELLEE AND CROSS-APPELLANT, V. JAMES LEON PETERSEN, APPELLANT AND CROSS-APPELLEE.

451 N.W.2d 390

Filed February 16, 1990.   No. 87-1068.

Kevin V. Schlender for appellant.

Charles W. Campbell, York County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is an appeal from the order of the district court in a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act, Neb. Rev. Stat. §§ 42-762 et seq. (Reissue 1988) (RURESA). The trial court found the sum of $17,694.30 to be due and owing relator by the respondent as a result of a California divorce decree and ordered the respondent to pay said amount in monthly payments of $150.

The pleadings alleged and the proof supported a duty of support based on a March 14, 1967, interlocutory judgment of divorce and a January 22, 1968, final judgment of divorce entered by the superior court for the County of Los Angeles, California, in favor of the relator and against the respondent herein. Those decrees required the respondent to pay to the relator the sum of $12.50 per week for each of two children, commencing March 18, 1967, and continuing with respect to each child until such child reached the age of 21 or until emancipation. The certificate for support from the California court recited that only $50 had been paid on the judgment and that there was $24,060.50 in arrears of said judgment as of December 19, 1986, with a request that the respondent be ordered to pay a reasonable amount on such arrearage. The answer filed by the respondent was essentially a general denial, with an allegation of the affirmative defense of laches.

The relator testified that but for $50, the respondent had paid her nothing by way of support since the entry of the California decree. The California decree was received in evidence over the objection of the respondent. Relator admitted that respondent's parents, the children's grandparents, had made substantial payments directly to the two children throughout the years, which she claimed generally were in the nature of gifts. She also agreed that she had received monthly payments of $35 or $50 during a 14-year period, totaling $7,500, from respondent's parents. However, although she used that money for support of her children and herself, she denied any agreement or information which would lead her to believe that these payments were being made in behalf of the respondent to apply on the divorce decree. Relator also estimated that she had paid a total of $10,000 on medical

expense during the period of time from the divorce until the children reached the age of 21 or became emancipated.

The trial court in its order determined that there was $24,060.50 accrued but unpaid child support pursuant to the final judgment of divorce entered in the California court; determined that there were accrued and unpaid medical and dental expenses, authorized by that final judgment, in the amount of $5,000; and determined that others had paid on behalf of the respondent for child support and medical and dental expenses the amount of $11,366.20. It was in this manner that the trial court arrived at the amount of the present judgment of $17,694.30.

Appellant's assignments of error may be distilled into one: that the trial court should have made an independent determination of the amount owed for support for the children rather than to have adopted the amount set forth in the California decrees. Appellee has cross-appealed, claiming that the court erred in admitting an affidavit submitted by respondent's parents as to amounts which they paid to relator and the purpose for which the payments were made, that the court erred in giving respondent credit for payments made by his parents, and that the court erred in determining the amount to which relator was entitled for medical expense incurred.

The basic question raised by this appeal is whether in a RURESA action the Nebraska court, as a responding court, is entitled to rely on the prior support decree of another court, here the California court, to establish the duty of support and the extent thereof to the date of filing. Stated another way, must the responding court ignore that decree and the amount of support that has accrued under such decree as of the date of trial and then, based on the evidence received at trial, independent of the foreign decree, determine anew the duty of support and the amount thereof for the period passed?

Respondent objected to the reception into evidence of the California decree on two grounds: first, that the final decree was issued a matter of 9 months after the interlocutory decree, whereas California law requires that it be done after 1 year, and second, the decree was not relevant to the finding by the Nebraska court of the duty and degree of support required of

the respondent.

Addressing the first issue, it is true that the final decree, dated January 22, 1968, states in substance that an interlocutory decree was entered in March 1967 and that "more than one year having expired in accordance with Section 1342 Civil Code" (California), "it is adjudged that plaintiff be and is granted a final judgment of divorce . . . ."

Respondent challenges the validity of both documents by seeking to collaterally attack them on appeal. At no time has the respondent attempted to set aside, modify, or appeal the California support order.

In *Koch v. Koch*, 175 Neb. 737, 123 N.W.2d 642 (1963), and *Attebery v. Attebery*, 172 Neb. 671, 111 N.W.2d 553 (1961), this court held under somewhat similar circumstances that one who has by his or her conduct relied upon the validity of a divorce decree generally is estopped from denying its validity to the prejudice of the other party. In *Attebery*, the former husband was estopped from assailing the validity of the divorce decree because he (1) waited nearly 20 years after his wife obtained the decree to attack it, (2) had timely notice of the proceeding in which it was entered, (3) left his children to be cared for and nurtured by the divorced wife and her second husband, and (4) was himself remarried. All of these factors are present here, and respondent is estopped from assailing the validity of the California divorce decrees. Such a conclusion is also consistent with the California rule. See *Matter of Estate of Birch*, 140 Cal. App. 3d 776, 189 Cal. Rptr. 796 (1983).

As to the relevance of the decrees, § 42-784, a part of the RURESA provisions, provides in part as follows:

> If the action is based on a support order issued by another court, a certified copy of the order shall be received as evidence of the duty of support, subject only to any defenses available to an obligor with respect to paternity as set forth in section 42-788, or to a defendant in an action, or a proceeding to enforce a foreign money judgment.

However, respondent argues that the district court here should have made an independent determination of the amount owed for the support of the children during their minority

instead of adopting the amount set forth in the California decrees.

Respondent cites us to *State of Iowa ex rel. Petersen v. Miner*, 226 Neb. 551, 412 N.W.2d 832 (1987), and *Chisholm v. Chisholm*, 197 Neb. 828, 251 N.W.2d 171 (1977), for the proposition that " '[u]nder [RURESA] the court in the responding state may fix the support payment at a different amount than that specified by the judgment in the initiating state.' " 226 Neb. at 553, 412 N.W.2d at 833. See, also, *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988).

All three of these cases involved *prospective* modification of an *ongoing* duty to support. The respondent urges this court to extend the application of these cases to allow district courts to retroactively modify accrued and unpaid child support arrearages.

The respondent cites us to *State on Behalf of McDonnell v. McCutcheon*, 337 N.W.2d 645 (Minn. 1983), for the proposition that under the RURESA provisions existing in Minnesota, the responding court need not grant an award of accrued arrearages under a foreign order except to the extent the petitioner can prove the actual amount he or she had reasonably expended in support of the child. The respondent then argues that the petitioner in the instant case failed to prove the extent or actual amount she reasonably expended in the care of her two children.

It is difficult to color-match cases because each case depends upon the nature of the particular statutory provisions. We dispose of the analogy attempted with *McCutcheon* by pointing out that the statutory provisions found in Minnesota at that time are different from those in effect in Nebraska and that legislative changes made in Minnesota since that time demonstrate that *McCutcheon* probably is no longer the law of that state. Taking the act (RURESA) at face value, it is apparent that its purposes are to "improve and extend by reciprocal legislation the enforcement of duties of support." § 42-762. It is important to remember that this act is procedural in nature rather than substantive. "Duties of support applicable under sections 42-762 to 42-7,104 are those imposed under the laws of any state where the obligor was present for the period during

which support is sought." § 42-768.

Section 42-763 provides in pertinent part as follows:

> (b) Duty of support means a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for divorce, separation, separate maintenance, or otherwise and includes the duty to pay arrearages of support past due and unpaid.
>
> . . . .
>
> (n) Support order means any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.

Section 42-770 provides in part as follows: "All duties of support, including the *duty to pay arrearages*, are enforceable by a proceeding under sections 42-762 to 42-7,104 including a proceeding for civil contempt."

It becomes quite apparent from the act itself that a custodial parent has an option of obtaining support by registration of the foreign support order, §§ 42-796 to 42-7,101, or by proceeding under part III of the act to obtain a new support order in the responding state, either by independent evidence where no foreign support order is in existence, or upon the basis of an existing foreign support order. §§ 42-768 to 42-795.

The relator chose in this instance to proceed under part III and used as a basis for the establishment of a duty of support the divorce decree from California containing an order for the support of the children.

As we read § 42-784, the relator, having introduced a certified copy of the California support order in these proceedings, at the very least made out a prima facie case for a finding of a duty of support on the part of the respondent. Respondent did not avail himself of the opportunity to present any defense provided for by § 42-784 and, as a matter of fact, conceded in his own testimony that he had been under order to provide such support. He in fact attempted to prove that such payments had been made.

Not only is the respondent wrong in declaring that under our

statutory framework the Nebraska court should have considered the matter of the duty to support independently of the California order, but because all of the payments previously ordered had accrued and the relator's interest in the California judgment had become vested, this court was bound to give effect to that judgment under the full faith and credit clause of the U.S. Constitution.

The courts of both California and Nebraska interpret this law in the same way, i.e., although prospective modification of an ongoing duty of support is permitted, retroactive modification of accrued arrearages in child support which become vested as they accrue is not. *Gordon v. Gordon*, 231 Neb. 857, 438 N.W.2d 762 (1989); *Ferry v. Ferry*, 201 Neb. 595, 271 N.W.2d 450 (1978); *In re Marriage of Koppelman*, 159 Cal. App. 3d 627, 205 Cal. Rptr. 629 (1984), *overruled on other grounds*, *In re Marriage of Fabian*, 41 Cal. 3d 440, 715 P.2d 253, 224 Cal. Rptr. 333 (1986).

Finally, in *Voichoskie v. Voichoskie*, 215 Neb. 775, 779, 340 N.W.2d 442, 445 (1983), *appeal after remand* 219 Neb. 670, 365 N.W.2d 467 (1985), this court stated: "The court may not forgive or modify past due child support, but may modify the amount of child support becoming due in the future."

Having determined that the California decree correctly defined the duty of support, i.e., $12.50 per week per child until each such child attains the age of 21 years or is emancipated, it is necessary to calculate the total amount of arrearage. It would appear that the California clerk who did such figuring was incorrect. We know that one of the parties' children, Vickie, attained the age of 21 years on August 7, 1985. We are also informed that the other child, Keith, became emancipated in August 1985. Using as a starting point March 18, 1967, as specified in the California decree, and continuing until August 1, 1985, for Keith, and August 7, 1985, for Vickie, the total arrearage is $23,976.79. When reduced by $50, the amount paid by respondent, the net amount due is $23,926.79.

We now take up relator's cross-appeal. We need not discuss her objection to the use of an affidavit to prove the payments made by respondent's parents. Relator admits in her own testimony that she received $7,500 in monthly payments made

directly to her by respondent's parents, which she used for support of the children. Respondent should receive credit for those payments. Respondent is not entitled to credit for payments made by his parents to the children throughout the years. This could not be considered support. We further find that the record supports the trial court's finding that respondent should reimburse the relator for medical and dental expenses in the amount of $5,000. This leaves a net due from the respondent to the relator of $21,426.79, together with costs of $102 and costs of this action on appeal, payable in the amount of $150 per month. The judgment of the district court is modified accordingly and, as modified, is affirmed.

AFFIRMED AS MODIFIED.

FAHRNBRUCH, J., dissenting in part, and in part concurring.

I dissent from that portion of the majority opinion that gives the appellant credit on child support for the moneys paid by his parents to the appellee.

At the trial court level, it is obvious that in crediting the appellant with the $7,500 paid by his parents to appellee, the trial judge erroneously relied upon an affidavit of the appellant's parents. The affidavit was apparently admitted pursuant to the hearsay exception defined by Neb. Rev. Stat. § 27-803(22) (Reissue 1989), which provides in part:

A statement not specifically covered by any of the foregoing exceptions [§ 27-803(1) to (21)] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of these rules and the interests of justice will be served by admission of the statement into evidence.

The proponent of the evidence has the burden of establishing each of the conditions established by § 27-803(22). See *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981). At the trial in this case, there was no showing that the affidavit of appellant's parents had any of the circumstantial guarantees of trustworthiness.

The critical issue to be addressed when considering the admission of evidence under the residual hearsay exception, § 27-803(22), is whether the circumstances surrounding the making of the hearsay statements provide guarantees of trustworthiness comparable to the other specific hearsay exceptions. *In re Estate of Severns*, 217 Neb. 803, 352 N.W.2d 865 (1984); *State v. Beam*, 206 Neb. 248, 292 N.W.2d 302 (1980). It is the circumstantial guarantees of trustworthiness of the speaker of the words at the time the affidavit was made which control. *In re Estate of Schoch, supra* (citing *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir. 1979)). See, also, *Polansky v. CNA Ins. Co.*, 852 F.2d 626 (1st Cir. 1988). Here, the affidavit was made only after the commencement of these proceedings and not at the time the appellant's parents paid any of the $7,500. The trustworthiness of the affidavit is suspect.

Moreover, the affidavit of appellant's parents was not more probative on the point for which it was offered than any other evidence which the proponent could procure through reasonable efforts. The evidence from appellant's parents could have been produced by deposition or by their testimony at the trial. There was no showing at the trial that the parents were unable to submit to a deposition or appear at the trial. The appellee had no opportunity to cross-examine appellant's parents as to the truth of the statements made in the affidavit.

Foundation for the affidavit's admission into evidence was lacking, and, in my opinion, the affidavit should never have been admitted into evidence.

In giving the appellant credit for the $7,500 paid by his parents to the appellee, the majority of this court bypasses the question of the admissibility of the affidavit of appellant's parents. The majority concludes that since the "[r]elator admits in her own testimony that she received $7,500 in monthly payments made directly to her by respondent's parents, which she used for support of the children," the appellant should receive credit for those payments.

It is submitted that the mere fact that the appellee acknowledged that she received, over a period of time, $7,500 from her ex-husband's parents and used it to support her children does not prove that such money, when given, was either

intended to be or should be credited to the ex-husband's obligation to pay child support.

At no time during the 14 years that she received money from appellant's parents was appellee ever told that those payments were to be considered as child support. During that same period, appellee was never asked nor did she ever agree to accept the money from appellant's parents as payment upon appellant's obligation to pay child support.

I would not allow the appellant credit for the $7,500 paid by his parents to the appellee, but I agree in all other respects with the majority opinion.

CAPORALE and SHANAHAN, JJ., join in this dissent and concurrence.