REQUESTED BY: C. Jo Petersen, Seward County Attorney
QUESTION 1: Under Neb.Rev.Stat. § 43-1720 (Reissue 1988), is the County Attorney required to provide the Clerk of the District Court with a return of service by certified mail on a Notice to Intent to Withhold Income?
QUESTION 2: Under Neb.Rev.Stat. § 43-1723, should the County Attorney provide the Clerk of the District Court a return of service by certified mail on a Notice to Withhold Income (to the employer)?
QUESTION 3: Are matters of custody and visitation an integral part of the child support action?
QUESTION 4: Pursuant to Neb.Rev.Stat. § 43-792 (Reissue 1988) of the Uniform Reciprocal Enforcement Support Act (URESA) or through Neb.Rev.Stat. §25-1587 et seq. (Reissue 1989), the Uniform Enforcement of Foreign Judgments Act (UEFJA), can a court order of this state be modified by a court of a receiving state.
Yes. The Clerk of the District Court should be provided a return of service by certified mail on a Notice of Intent to Withhold Income. A proof of service should be filed with the court with the signed receipt attached. The statute does not make such filing a condition to proceed, but it would be advisable since Neb.Rev.Stat. §25-507.01(2) does state that when service is by certified mail proof of service shall be filed within ten days after return of the receipt.
Yes. The statute provides that the County Attorney or authorized attorney shall notify the obligor's employer in the manner provided for service of summons in a civil action.
No. Under Neb.Rev.Stat. § 43-512.01
and 43-512.02 (Reissue 1988), the County Attorneys and/or the authorized attorneys are only mandated to take action to enforce support against the appropriate obligor and, if necessary, to establish paternity.
Yes, under URESA. The court of the responding state can prospectively fix the amount of current support to be paid by the obligor based on his or her ability to pay under URESA.
DISCUSSION 1: Neb.Rev.Stat. § 43-1720 provides that the County Attorney or authorized attorney shall send a notice by certified mail to the last known address of the obligor stating that an assignment of his or her income by means of income withholding shall go into effect within fifteen days. The statute does not say that the County Attorney is required to provide the Clerk of the District Court with a return of service by certified mail. It is the responsibility of the County Attorney or authorized attorney to ensure that the notice complies with due process.
Neb.Rev.Stat. § 43-1722 provides that if no hearing is requested by the obligor or if after hearing the Department determines that the assignment should go into effect the County Attorney or authorized attorney shall certify the amount to be withheld from the obligor's disposable income.
If the obligor signs for the certified mail and the certification is returned to the County Attorney or authorized attorney, the essentials of due process have been provided.
Neb.Rev.Stat. § 25-505.01(c) (Reissue 1989) provides service may be obtained by certified mail with the return receipt requested showing to whom and where delivered and the date of delivery. The statute also provides that a proof of service should be filed with the court with the signed receipt attached.
One can readily visualize situations that could develop in this attempt to give adequate notice. What if the obligor does not pick up the notice or sign the receipt? At that point, there would have to be a decision made as to whether to send the notice by certified mail a second time if one was reasonably sure that the obligor is at the particular address. If the return receipt (the green card) does not come back a second time, it would be reasonable and practical to proceed to enter a default.
In the event the notice was challenged from the standpoint of a lack of due process, it would be necessary to show that the obligor lived at that particular address and the notice was not claimed. If it could be shown that the obligor failed on two occasions to claim the notice, it is our opinion that he or she would not be able to claim a lack of due process. A different situation would exist if it was found that the obligor had actually moved from that particular residence. If that fact were established, it would be necessary to find the correct address and start the procedure again. In the event that it was found that the individual had actually moved from that address, it would be necessary for the County Attorney or authorized attorney to contact the employer and suspend the withholding.
DISCUSSION 2: Since the notice to the employer shall be in a manner provided for service of summons in a civil action (Neb.Rev.Stat. § 25-505.01), the County Attorney has the statutory options of service which includes service by certified mail. Neb.Rev.Stat. §25-507.01(2) states that the plaintiff or plaintiff's attorney shall file a proof of service within ten days after the return of the signed receipt.
DISCUSSION 3: Neb.Rev.Stat. §43-512.01 and 43-512.02 provide for enforcement of child support against those legally obligated to pay and also to establish paternity where the mother has named a particular individual.
This direction is for support only. Issues of custody and visitation are to be bifurcated or handled in a separate action.
It is necessary that the separation be established because the action basically is brought on behalf of the child for the child's benefit. The mother is not entitled to be a party in a paternity action in that Neb.Rev.Stat. §43-512.02 states that "any child, or any relative of such a child, may file . . . for paternity determination services."
In actions for support and paternity actions, there are times when a cross-petition is filed by the obligor asking for custody or visitation. Such issues are not part of the support process under Neb.Rev.Stat. §43-512.01 and 43-512.02. Custody and visitation are ancillary to the original divorce action or, in the case of paternity, an issue to be bifurcated from the statutorily mandated action for support.
DISCUSSION 4: URESA allows courts in a responding state to fix the support payment at a different amount than that specified by the judgment in the initiating state. The allowance for fixing support payments involves only prospective modification of an ongoing duty to support. Contra Costa County v. Petersen, 234 Neb. 418, 451 N.W.2d 390, 394
(1990).
The essence of Nebraska law and the law of states that have adopted URESA is that a reviewing state can modify a support order if two conditions are met. First, the reviewing state must have proper jurisdiction as provided for in URESA or that state's statutes. Next, the reviewing court's modification can only be prospective. A modified court order cannot modify a support order in a manner that retroactively modifies accrued arrearages in child support. It has been generally held that a court in a responding state may fix the support payment at a different amount than that specified by the judgment in the initiating state. Petersen v. Miner, 226 Neb. 551, 412 N.W.2d 832 (1987); Chisholm v. Chisholm, 197 Neb. 828, 251 N.W.2d 171 (1977); Moore v. Moore, 252 Iowa 402, 107 N.W.2d 97 (1961). Past experience has usually involved situations where the court of the responding state lowered the amount of the initiating state. However, in this instance, the California court increased the amount that had been ordered by the Nebraska court.
Neb.Rev.Stat. § 42-792 (Reissue 1988) of the URESA provides as follows:
 "A support order made by a court of this state pursuant to sections 42-762 to 42-7,104 shall not nullify and shall not be nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state."
In Marshall v. Marshall, 240 Neb. 322, ___ N.W.2d ___ (1992), the Nebraska Supreme Court addressed the fact that URESA, as compared to UEFJA, can result in a responding state fixing or modifying the amount of the child support payment of the initiating state.
Your request for an Opinion indicated that the income withholding order from the State of California was implemented through URESA. Given that fact, it is necessary that we consider the disbursement of the increased amount ($680) in terms of the case law and state law applicable in the handling of a state debt which results from an individual having been on ADC.
The thrust of the question is whether the excess of the $100 order from Nebraska should go to the obligee mother for current support and/or arrearages owed her or to the State of Nebraska for an existing debt resulting from receiving state assistance.
Having established that the responding state (California) can fix the amount of a child support payment different from the Nebraska order, the issue is how that increased amount, $680 obtained through income withholding, should be apportioned and disbursed.
In order to properly address that question, it is necessary to consider it from two possible factual situations: (1) where the obligee mother is currently receiving an ADC grant, and there is an existing state debt; and (2) where the obligee mother is no longer receiving an ADC grant, but there is an existing state debt.
Neb.Rev.Stat. § 43-512.07(1) (1991 Supp.) states, "the application for and acceptance of an aid to dependent children payment . . . shall constitute an assignment by operation of law to the Department of Social Services of any right to . . . support. . . . The department shall be entitled to retain such support up to the amount of aid to dependent children paid to the recipient."
In situation No. 1, it is necessary to note that at the time of applying for ADC, the obligee mother gave an assignment to the Department of Social Services of child support payments. Such an assignment includes all support payments and would include any increased amount up to the amount of ADC being received. Therefore, the $680 would have to be forwarded by the Clerk of the District Court to the State of Nebraska. The Department should keep that amount up to the amount of ADC payments for each one month period until the state debt is paid. Upon full payment of the state debt, pursuant to the assignment, the $680 would go directly to the mother.
In situation No. 2 where the mother would no longer be receiving a cash grant, there is a partial release of the assignment by the creditor (Department of Social Services), and the entire monthly payment would go to the obligee mother. In granting the partial release, it releases the state's interest in the current monthly ordered amount. However, if the obligor ever pays more than the $680, the excess would be applied to the state debt.
Of interest as to situation Nos. 1 and 2, the recipient's monthly report to the Department of Social Services would show the available income. Then the Department of Social Services would review the amount of the support payments in terms of other income, number of children, and necessary costs of living and assist the client in the determination as to whether she should continue to receive a cash grant or live on her increased support payments with certain supplemental benefits such as Medicaid and food stamps.
In regard to the status of the two orders, it is the opinion of this office that new support orders issued under URESA actions do not nullify, modify, or supersede the original support decree but, instead, provide additional supplementive, accumulative remedy to the plaintiff. The language of the statute stating that amounts accruing under one court order will be credited to another court order contemplates two or more support orders being outstanding and valid at one time. Thus, "the authority of the court originally ordering payment is not affected or is its order modified by an order of the court of the responding state fixing another or different sum." Thompson v. Thompson,366 N.W.2d 845 at 848 (S.D. 1985) citing to Despain v. Despain,78 Idaho 185, 190, 300 P.2d 500, 503 (1956).
In view of the above rationale, it is suggested that the filing of a URESA petition be docketed separately from the original divorce, child support, or paternity action that resulted in the first decree. The two files should be cross-referenced with separate ledgers kept as to payments. Thus, the payments for current support would be properly credited against the original order as required in Neb.Rev.Stat. § 42-792 cited above.
Sincerely,
DON STENBERG Attorney General
Royce N. Harper Senior Assistant Attorney General
APPROVED BY:
___________________________ Don Stenberg Attorney General